No. 22,891.

*In re* CHARLES E. BALL, *Petitioner.*

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Bail—Capital Offense—Persons Charged with Murder in First Degree are Bailable.* Murder in the first degree not being punishable capitally, persons charged with that offense are bailable, under the self-executing provision of the bill of rights, that all persons shall be bailable by sufficient sureties, except for capital offenses where proof is evident or the presumption great, notwithstanding the statute of 1911, which provides that persons charged with the crime of murder in the first degree shall not be admitted to bail when the proof is evident or the presumption great.

Original proceeding in habeas corpus. Opinion filed March 23, 1920. Writ allowed.

*D. M. Dale, S. B. Amidon, S. A. Buckland, H. W. Hart,* all of Wichita, and *Sam P. Ridings,* of Medford, Okla., for the petitioner.

*A. M. Jackson,* of Winfield, for the respondent.

The opinion of the court was delivered by

BURCH, J.: The petitioner was arrested on a warrant charging murder in the first degree, and at the conclusion of a preliminary examination was bound over to the district court, without bail. The writ of habeas corpus was prayed for to obtain admission to bail, which this court granted.

The territorial crimes act of 1859 contained the following provisions:

"SECTION 1. Every murder which shall be committed by means of poison or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree.

"SEC. 2. Every murder which shall be committed purposely and maliciously, but without deliberation and premeditation, shall be deemed murder in the second degree.

"SEC 3. Persons convicted of murder in the first degree shall suffer death. Those convicted of murder in the second degree shall be punished by confinement and hard labor for not less than ten years." (Compiled Laws 1862, ch. 33, §§ 1, 2, 3.)

*In re* Ball.

The territorial code of criminal procedure contained the following provision:

"Persons charged with an offense punishable with death, shall not be admitted to bail, when the proof is evident or the presumption great; but, for all other offenses, bail may be taken in such sum as, in the opinion of the magistrate, will secure the appearance of the person charged with the offense, at the court where such person is to be tried." (Compiled Laws 1862, ch. 32, § 45.)

These statutes were continued in force in the revision of 1868 (Gen. Stat. 1868, ch. 31, §§ 6, 7, 8; ch. 82, § 53), and until modified as hereinafter stated.

The constitution adopted in 1859, under which the state was admitted to the Union in 1861, contains the following provision:

"All persons shall be bailable by sufficient sureties except for capital offenses where proof is evident or the presumption great." (Bill of Rights, § 9, Gen. Stat. 1915, § 113.)

The legislature of 1907 amended the crimes act by enactment of the following statute:

"Persons convicted of murder in the first degree shall be punished by confinement and hard labor in the penitentiary of the state of Kansas for life. Those convicted of murder in the second degree shall be punished by confinement and hard labor for not less than ten years." (Gen. Stat. 1915, § 3369.)

Following enactment of this statute, persons charged with murder in the first degree were generally admitted to bail. In a few instances bail was refused, and on application to this court bail was allowed as a matter of right, under the provision of the constitution. In 1911, the legislature amended the criminal code by enactment of the following statute:

"Persons charged with the crime of murder in the first degree shall not be admitted to bail when the proof is evident or the presumption great; but for all other offenses bail may be taken in such sum as in the opinion of the magistrate will secure the appearance of the person charged with the offense at the court where such person is to be tried." (Gen. Stat. 1915, § 7962.)

Following enactment of this statute, courts and committing magistrates generally admitted to bail in accordance with the bill of rights, precisely as if the statute had not been passed. In a few instances in which bail was denied, this court granted bail. In order to render inexcusable denial of bail in any mur-

der case, so long as murder is not a capital offense and the constitution remains unchanged, this opinion is published.

The press of more important business prevents the court from assuring itself with certainty of the date of the initial appearance of the provision of the bill of rights in Anglo-American legal history. It is sufficient for present purposes to know that it formed section XI of the "Laws Agreed Upon in England," etc., which accompanied Penn's frame of government for the province of Pennsylvania, to which the illustrious Quaker set his "hand and broad seal, this five and twentieth day of the second month, vulgarly called April, in the year of our *Lord* one thousand six hundred and eighty-two." (5 Thorpe Am. Ch. and Const., p. 3059.) While the habeas corpus act of three years before, and the bill of rights act of seven years later, dealt with bail, neither one employed the same or equivalent phraseology.

The provision in question appeared in the constitution under which Kentucky was admitted to the Union in 1792, and appeared in form or substance in a majority of the constitutions framed before Kansas became a state. The Kansas bill of rights followed the Ohio model, and the provision was contained in the Ohio constitutions of 1802 and 1851. In all these constitutions the word "capital" had a definite, settled meaning, which was the meaning accorded the word in general usage whenever employed as an adjective qualifying the terms crime, offense, or felony—punishable by deprivation of life. Doctor Johnson's definition is a sentence from Bacon, "That which affects life." The Oxford English dictionary gives many illustrations, extending from 1483 to modern times. Illustrating the present meaning of the word, Webster's New International dictionary and the Century dictionary give quotations from Spenser, Milton, Swift, and Macaulay. Histories of English and American legal institutions and legal textbooks know no other meaning than that indicated, and the same is true of the courts:

"The language of the constitution is: 'All persons shall, before conviction, be bailable by sufficient securities, except for capital offenses where the proof is evident or the presumption great.' . . . Under the constitution, and the law as it stood before the adoption of the Penal Code, although the offense might be reduced, on the trial, below the grade of the one charged, still, when the charge was made, and the proof

*In re* Ball.

evident or the presumption great, the magistrates were not permitted to take bail. The question, in contemplation of law, to be tried by the magistrates, on an application for bail, was not whether the accused must necessarily be punished with death—because this they could not know until after the trial—but whether he might be so punished, and probably would be under the proof. . . . The Penal Code is then adopted, giving to the juries the power of saying, in cases of murder in the first degree, whether the accused shall suffer death, or go to the penitentiary for life. This is but a simple extension of the power of the jury one degree beyond what it was before. Capital punishment still remains, and, in cases where the jury so decide, with precisely the same certainty that it existed before the adoption of the Penal Code." (*Ex parte McCrary*, 22 Ala. 65, 71.)

"If the statute imposes death as a punishment, and provides for no other punishment, of course the offense is a capital felony. The question now is, when the statute provides that the punishment shall be death or imprisonment, as the jury shall recommend, and the jury recommends imprisonment, whether the verdict of guilty of the offense is a conviction of a capital offense. In our view the expression 'capital felony,' when used in our law, is merely descriptive of those felonies to which the death penalty is affixed as a punishment under given circumstances to distinguish such felonies from that class in which under no circumstances would death ever be inflicted as a penalty for the violation of the same." (*Cæsar v. State*, 127 Ga. 710, 712.)

"Section 3910 of the General Statutes provides: 'Twelve men shall constitute a jury to try all capital cases, and six men shall constitute a jury to try all other criminal cases.' A capital case is a case in which a person is tried for a capital crime. A capital crime is one for which the punishment of death is inflicted. The crime of murder in the second degree is punished by imprisonment in the state prison for life, and is not a capital crime." (*Adams v. State*, 56 Fla. 1, 13.)

"A capital crime is one punishable with the death of the offender." (*Commonwealth v. Ibrahim*, 184 Mass. 255, 258.)

"By the constitution it is provided: 'That all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident, or the presumption great.' Sec. 24, Bill of Rights.

. . . . . . . . . . . . .

"A 'capital offense' is one which is punishable—that is to say, liable to punishment—with death. This is the substance of the definitions by the lexicographers, both professional and lay." (*Ex parte Dusenberry*, 97 Mo. 504, 507.)

"Of course, a capital offense is one which may be punished by death. There can be no capital offense unless the punishment is by death. (*Ex parte Russell*, 71 Tex. Cr. 377, 378.)

"It will be observed that the legislature, in the enactment of the sections quoted, construed the words 'capital offenses' in the constitu-

tional provision as meaning offenses punishable by death. This is the general and legal meaning of the words." (*In re Schneck,* 78 Kan. 207, 209.)

The legal effect of the constitutional provision as a whole is equally definite and well settled. All offenses are bailable of right, except those to which the death penalty is affixed, and those to which the death penalty is affixed are bailable unless the proof be evident or the presumption great:

"The Constitution of the State declares that 'all persons shall be bailable by sufficient sureties unless for capital offenses, where the proof is evident or the presumption great.' (Art. 1, sec. 7.) The Criminal Practice Act, however, provides that 'a person charged with an offense may be admitted to bail before conviction, as follows: 1st, as a matter of discretion in all cases where the punishment is death; 2d, as a matter of right in all other cases; and that 'no person shall be admitted to bail when he is charged with an offense punishable with death, when the proof is evident or the presumption great.' (Secs. 509 and 510.) The Constitution, as will be thus seen, secures to the citizen accused the right to bail in all cases, except when charged with a capital offense, and even then, unless the proof of guilt is evident, or the presumption of it is great. The statute, on the other hand, renders the admission to bail a matter of discretion, where the punishment is death, unless such evident proof or great presumption exist. In this respect the statute conflicts with the fundamental law. The admission to bail in capital cases, where the proof is evident or the presumption is great, may be made a matter of discretion, and may be forbidden by legislation, but in no other cases. In all other cases, the admission to bail is a right which the accused can claim, and which no Judge or Court can properly refuse." (*People v. Tinder,* 19 Cal. 539, 541.)

"Under our Code of Procedure special *venires* are only provided for in 'capital' cases. . . .

"Article 35 of our Penal Code expressly declares that 'a person for an offense committed before he arrived at the age of seventeen years shall in no case be punished by death.'

"When the district attorney admitted that the defendant was under seventeen years of age, that was an admission that the case was not 'capital,' and that death could in no event be inflicted, notwithstanding he was indicted for and might be convicted of murder of the first degree. The case was not a 'capital' case, and consequently the court did not err in overruling the defendant's motion for a special *venire.* He was not entitled to one." (*Walker v. The State,* 28 Tex. Ct. App. 503, 504.)

"The Constitution, article 1, section 11, reads as follows: 'All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident,' etc. The general proposition enunciated in the Bill

*In re* Ball.

of Rights, therefore, is that all prisoners shall be bailable with the exception stated, that unless for capital offenses when the proof is evident. In order to make the case nonbailable under this clause of our Constitution, the proof must be evident that there has been committed a capital offense." (*Ex parte Russell*, 71 Tex. Cr. 377, 378.)

"The constitution of this state, sec. 8, art. I, provides that 'All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great.' By ch. 103, Laws of 1853, capital punishment is abolished in this state.

"By the Court, Downer, J.: The court are of opinion that since the abolition of capital punishment in this state, persons charged with murder are in all cases bailable." (*In re Charles A. Perry*, 19 Wis. 676, 677.)

"The first objection is merely stated without argument or sustaining authority. We assume, however, that it is based upon the statute, Rem. & Bal. Code, § 2138 (P. C. 135, § 1167), which, so far as pertinent, reads:

" 'In prosecution for capital offenses, the defendant may challenge peremptorily twelve jurors; in prosecution for offenses punishable by imprisonment in the penitentiary, six jurors; in all other prosecutions, three jurors.'

" "It is clear that the twelve challenges are only allowed in prosecutions for capital offenses. A capital offense is one which may be punishable with death. . . . The statute above quoted obviously uses the term 'capital offenses' as so defined. The second clause, by allowing only six peremptory challenges in prosecutions for offenses punishable by imprisonment in the penitentiary, in effect defines such offenses as not capital. Capital punishment was abolished in this state by the act approved March 22, 1913, Laws 1913, p. 581 (3 Rem. & Bal. Code, § 2392), which went into effect on June 9, 1913, ten days before this case was called for trial. The first clause of the statute relating to peremptory challenges above quoted was clearly suspended by the abolition of capital punishment. Since there is now no capital punishment in this state, there are no capital offenses, hence no offense in prosecution for which the provision for twelve peremptory challenges can be invoked. No amount of argument could add to the clear sequence of this conclusion." (*State v. Johnston*, 83 Wash. 1, 2.)

The constitution, which in this respect is self-executing, left the legislature free to prescribe whatever punishment it saw fit for murder, and all other offenses. The constitution, however, dealt specifically with the subject of bail, and made all offenses which the legislature did not see fit to punish capitally, bailable. The meaning of the bill of rights at the time it was adopted cannot be changed without changing the constitution itself. This the legislature is not competent to do. At present, treason is the only capital offense under the laws of this state,

and all others are bailable as a matter of right, notwithstanding the statute of 1911.

The territorial code of criminal procedure contained two provisions relating to bail: one in the division relating to arrest and examination of offenders, quoted above, page 537, and one in the division relating to indictments. Offenses could be prosecuted by indictment only, and after indictment found, the following section governed:

"All offenses are bailable by sufficient sureties, except murder, when the proof is evident or the presumption great." (Compiled Laws 1862, ch. 32, § 114.)

This section has been retained in subsequent compilations of the statutes, and appears as section 8048 of the General Statutes of 1915. Manifestly, the section fell under the restriction of the bill of rights as soon as the constitution became effective, and has continued under such restriction ever since.