STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CRAIG JOHNSON, DEFENDANT-RESPONDENT.

Argued June 5, 1972—Decided July 20, 1972.

352

Mr. *Elson P. Kendall,* Assistant Prosecutor, argued the cause for appellant (*Mr. Karl Asch,* Union County Prose-

cutor, attorney; *Mr. Michael H. Kessler,* Assistant Prosecutor, on the brief).

*Mr. John De Cicco,* Deputy Attorney General, argued the cause as *amicus curiae* for State of New Jersey (Mr. *George F. Kugler, Jr.,* Attorney General.)

*Mr. Herbert I. Waldman,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Robert L. Martin,* Assistant Deputy Public Defender, on the brief).

The opinion of the Court was delivered by

FRANCIS, J. The Union County Grand Jury indicted defendant Johnson for murder, and shortly thereafter he applied to be released on bail pending trial. On July 29, 1971 following a hearing the trial court found there was a fair likelihood that Johnson was in danger of a jury verdict of first degree murder, and therefore he was not entitled to bail. *State v. Konigsberg,* 33 *N. J.* 367 (1960).

Subsequently this Court in *State v. Funicello,* 60 *N. J.* 60, *cert.* den. *sub nom New Jersey v. Presha,* 408 *U. S.* 942, 92 S. Ct. 2849, 33 L. Ed. 2d 766 (1972), pursuant to a mandate of the United States Supreme Court, ruled that the death penalty provision of the New Jersey homicide statute was invalid. It then appearing that if upon trial Johnson was found guilty of murder in the first degree he could not be sentenced to death, his motion for bail was renewed. The motion was granted and a further hearing ordered to fix the amount of bail. On the State's application we stayed the proceeding and granted leave to appeal directly to this Court so that the validity of the bail order might be considered at the same time as *State v. Lyle,* 61 *N. J.* 179 (1972), decided today.

Article I, par. 11 of the Constitution deals specifically with the matter of bail. It provides:

All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great.[1]

As we indicated in *Konigsberg,* at common law in England and in this country, including New Jersey, the grant of bail in *all* cases rested in the discretion of the courts. Apparently because of the harsh attitude of judges on the subject various States began to include liberal provisions for bail in their early Constitutions. Connecticut, the first State to do so, in 1818 provided for allowance of bail in all cases except capital offenses. The language quoted above was used in doing so and we copied it later into our 1844 Constitution. Subsequently 40 States followed suit, using substantially the same command. *In re Corbo,* 54 *N. J. Super.* 575, 583 (App. Div. 1959), certif. den. *Corbo v. Donahue,* 29 *N. J.* 465 (1959).

Although the rule was not incorporated into our Constitution until 1844, its existence by statute preexisted the 1776 Constitution. Chapter VIII of the 1682 Laws of the Province of East Jersey provided "That all persons arrested shall be bailable by sufficient sureties, unless for capital offenses, where proof is evident or presumption great." *Leaming & Spicer, Grants and Concessions of New Jersey,* 1664–1702, 235 (1881). The depth of the feeling of New Jersey citizens in this regard is shown by the proceedings of the Constitutional Convention of 1844. It was proposed there that the qualifying phrase "where proof is evident or presumption great" be exscinded so as to bar bail

---

[1]This provision has been substantially incorporated in *R.* 3:26–1 of the Rules governing criminal practice, as follows:

All persons, except those charged with crimes punishable by death when the proof is evident or presumption great, shall be bailable before conviction on such terms as, in the judgment of the court, will insure their presence in court when required, having regard for their background, residence, employment and family status and, particularly, the general policy against unnecessary sureties and detention * * *.

for all capital offenses. The motion was defeated. *Proceedings, New Jersey Constitutional Convention,* 1844 at 157.

As of 1970 the Constitutions of 37 States by language similar to ours had established such a right to bail in non-capital cases. These Constitutions, including that of New Jersey, also contain the additional mandate that "Excessive bail shall not be required." Twelve State Constitutions and the Eighth Amendment of the United States Constitution incorporate only this latter prohibition.[2] See, *Preventive Detention, Hearings Before the Subcomm. on Constitutional Rights of the Sen. Comm. on the Judiciary,* 91st Cong. 2nd Sess. at 1193 (1970).

Historically, therefore, in New Jersey the right of the individual to bail before trial is a fundamental one. Certainly since 1844 at least, the courts have been under a mandate to allow bail in all criminal cases, including capital offenses, excepting only those instances "when the proof is evident or the presumption great." A capital offense has long been regarded as one for which the death penalty may be imposed. *State v. Konigsberg, supra; State v. Williams,* 30 *N. J.* 105, 125 (1959) ; *In re Corbo, supra.* So prior to *Funicello* a pretrial denial of bail meant that the accused was charged with a homicide for which the death penalty might be imposed, and that the proof of his guilt or the presumption thereof was great. *Funicello* having invalidated the death penalty for the type of homicide charged against Johnson, the question for decision now is whether the Constitution requires that he must be released on bail.

█ Obviously the duty of the judiciary is to obey the mandate of the Constitution. To deny bail in defiance

---

[2]Doubt as to whether this type of clause imported an absolute right to bail was responsible in most States for the additional language of the type contained in the New Jersey Constitution which specifically granted the right to bail in all non-capital cases. *Foote, The Coming Constitutional Crisis in Bail,* 113 *U. Pa. L. Rev.* 959, 969 (1965).

thereof is to punish an accused before conviction, and to ignore the presumption of innocence which attends every citizen charged with crime — actions which are not tolerable under our system of justice. The attitude of the courts toward the present issue, must be deemed presaged by *State v. Williams, supra*, 30 *N. J.* at 125. In that case Williams was indicted and tried for first degree murder. At trial the jury found him guilty of second degree murder. We held that such finding constituted an acquittal of first degree murder, and despite our reversal of the conviction and order for new trial (*State v. Williams*, 29 *N. J.* 27 (1959)), on principles of double jeopardy, he could not be retried for first degree murder. Williams having sought release on bail pending the retrial, this Court held that since his life was no longer subject to forfeit, the offense was bailable under the Constitution. Consequently the trial court was directed to fix bail on remand of the case to it.

*State v. Wolf*, 46 *N. J.* 301 (1966) is also significant in this connection. Wolf was convicted of murder in the first degree and the jury recommended life imprisonment. The conviction was reversed for trial errors (*State v. Wolf*, 44 *N. J.* 176 (1965)), and retrial was ordered. Prior to retrial on defendant's application the trial court ruled that the State was barred from again seeking the death penalty. On appeal by the State we affirmed, holding that the jury having rendered a judgment against infliction of the death penalty, the issue must be considered as adjudicated and binding for purposes of the forthcoming trial. The distinction drawn between a verdict of guilt of first degree murder which carried the death penalty and such a verdict which imposed life imprisonment obviously signified that murder which can produce only life imprisonment is not a capital offense, within the meaning of the Constitution.

In a number of States where the Constitution contained the same provision as ours respecting the nonbailability of capital offenses, the death penalty was subsequently abolished. Efforts were made in those States to perpetuate the ban on

bail on the theory that the nature of the crime remained the same even though it no longer carried the possibility of death, and that exposure to a sentence of life imprisonment justified a holding that the crime was still a capital one. Such attempts were rejected.

For example, in *State v. Pett,* 253 *Minn.* 429, 92 *N. W.* 2d 205 (1958), the Constitution incorporated exactly the same provision for bail as does ours. Thereafter the Legislature abolished the death penalty. When Pett was indicted for murder the State objected to bail substantially for the reasons advanced in the case before us. It contended that since only murder in the first degree was punishable by death, the Constitution had reference to the offense rather than to the punishment and that murder in the first degree was still murder in the first degree, even though no longer punishable by death. In discussing the contention the court said that what the State was asking was that the Constitution be construed to read "except for murder in the first degree" instead of "except for capital offenses." Such a construction it declared was "untenable from a constitutional standpoint." 92 *N. W.* 2d at 206.

The court pointed out that from earliest times a capital offense meant one for which the death penalty may be imposed, and that the Constitution left it to the Legislature to define what was such an offense. It then continued:

When we abolished the death penalty for murder in the first degree, there no longer was any capital offense here. Our Constitution has never been amended to keep pace with the change, nor has our statute been so amended. Of course, an amendment of the statute without an amendment of the Constitution would be ineffective to deprive a defendant of rights which he is guaranteed under our bill of rights. *Id.*

The court noted the different treatment provided in Article 1, section 9 of the Rhode Island Constitution which gave the right to bail "unless for offenses punishable by death *or by imprisonment for life,* when the proof of guilt is evident or the presumption great." (See *Taglianetti v. Fon-*

*taine,* 105 *R. I.* 596, 253 *A.* 2d 609 (1969)). It said also that the right to amend the Constitution rests with the people and that if bail is to be withheld in cases other than capital cases, the change must be brought about by such amendment. Citing a number of similar Constitutions of States which had repealed the death penalty, it noted that all of their courts had held that the right to bail was absolute. The conclusion finally reached was that under the Minnesota Constitution the trial court had no discretion except to fix the amount of bail. At 207–209 of 92 N. W. 2d.

*Ex parte Ball,* 106 *Kan.* 536, 188 *P.* 424 (1920), may be described as a source case on this subject. The Kansas Constitution included practically the same provision as ours respecting bail in capital offense cases. Thereafter the Legislature abolished the death penalty for first degree murder in favor of life imprisonment, but by a later statute of 1911 ordained that persons charged with first degree murder "shall not be admitted to bail when the proof is evident or the presumption great." Following his indictment for first degree murder Ball sought release on bail. After a review of the authorities the Supreme Court held that he had a constitutional right to bail. It said, among other things:

> The Constitution, which in this respect is self-executing, left the Legislature free to prescribe whatever punishment it saw fit for murder, and all other offenses. The Constitution, however, dealt specifically with the subject of bail, and made all offenses which the Legislature did not see fit to punish capitally bailable. The meaning of the Bill of Rights at the time it was adopted cannot be changed without changing the Constitution itself. This the Legislature is not competent to do. At present, treason is the only capital offense under the laws of this state, and all others are bailable as a matter of right, notwithstanding the statute of 1911. 188 *P.* at 426.

■ Many cases are referred to in *Pett* and *Ball* which clearly support the results reached. Moreover the general law treatises and law reviews confirm their view that where State Constitutions contain the same provision as ours as to bail, and the death penalty is abolished by the Legislature

or invalidated as in *Funicello,* a right to bail exists so long as the constitutionally described right thereto remains unchanged.[3] 8 *Am. Jur.* 2d, *Bail and Recognizance,* §§ 30–31, pp. 801–802 (1963); 8 *C. J. S. Bail* §§ 34(1), 34(2), 35, pp. 66–69, 79–81 (1962); *Annot.*: *Abolition of Death Penalty as affecting right to bail of one charged with murder in first degree,* 8 *A. L. R.* 1352 (1920); 6 *Words and Phrases,* "*Capital Case*", pp. 133–134; "*Capital Crime or Offense*", pp. 135–137; "*Capital Offenses*", pp. 183–184 (1966); *Note, Preventive Detention Before Trial,* 79 Harv. L. Rev. 1489, 1500 (1966); *Foote, The Coming Constitutional Crisis in Bail, supra,* 113 *U. Pa. L. Rev.* at 978; *Note, Determination of Accused's Right to Bail in Capital Cases,* 7 *Vill. L. Rev.* 438 (1962): *Note, Bail: An Ancient Practice Reexamined,* 70 *Yale L. J.* 966, 967 (1961); *Standards Relating to Pretrial Release, A. B. A. Project on Minimum Standards for Criminal Justice* 68 (Approved Draft 1968); *Freed and Wald, Bail in the United States: 1964,* 2–3 (1964); *The Case of the Dangerous Defendant—A Study and Proposal, 14th Annual Report of the Judicial Conference of the State of New York,* 124, 147 (1969). Expressed in pragmatic terms this right to bail means that the accused has the right to pretrial liberty on such bond in such amount as in the judgment of the trial court under the circum-

---

[3]In view of these authorities we cannot agree with the amendment to footnote 45 which the California Supreme Court added in *People v. Anderson,* 6 *Cal.* 3d 628, 657, 100 *Cal. Rptr.* 152, 172, 493 *P.* 2d 880, 900, *cert.* dismissed 406 *U. S.* 958, 92 S. Ct. 2060, 32 *L. Ed.* 2d 344 (1972). In *Anderson* the death penalty was declared unconstitutional as constituting cruel and unusual punishment in violation of the California Constitution. A petition for rehearing was filed on the question whether bail should be denied as formerly in murder cases where guilt is evident or the presumption great. By way of the footnote amendment the court said the offense was still murder, even though the death penalty could no longer be exacted. Therefore, "subject to our future consideration of this issue in an appropriate proceeding we hold that ⌈murders⌉ remain as offenses for which bail should be denied * * *."

stances of the case will insure his appearance at the trial. If, however, the court is satisfied from the evidence presented on the application for bail that regardless of the amount of bail fixed, the accused if released will probably flee to avoid trial, bail may be denied.

The underlying motive for denying bail in capital cases was to secure the accused's presence at the trial. In a choice between hazarding his life before a jury and forfeiting his or his sureties' property, the framers of the many State Constitutions felt that an accused would probably prefer the latter. But when life was not at stake and consequently the strong flight-urge was not present, the framers obviously regarded the right to bail as imperatively present. *State v. Konigsberg, supra; State v. Williams, supra.* It was considered that pretrial release on non-capital charges was a fundamental right founded in freedom and human dignity, reflected in the everpresent presumption of innocence, and requiring firm articulation in the Constitutions. As the United States Supreme Court said in *Stack v. Boyle,* 342 *U. S.* 1, 4, 72 S. Ct. 1, 3, 96 *L. Ed.* 3, 6, (1951) "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. * * * Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."[4]

In recent years in some jurisdictions where the right to bail in non-capital cases is not expressly included in the Constitution, the sharp increase in crime and a desire to compensate for a seeming progressive breakdown of our law enforcement structure, have produced agitation for some

---

[4]The court here was speaking with reference to the Federal statute and particularly to Rule 46(a) (1) of the Federal Rules of Criminal Procedure which unequivocally provided that a person arrested for a non-capital offense "shall" be admitted to bail. 342 *U. S.* at 4, 72 S. Ct. at 3, 96 *L. Ed.* at 6.

form of pretrial detention in cases where the prosecuting authorities feel that the accused, if released on bail on the pending charge, may engage in other crimes before he is brought to trial. The subject is highly controversial and serious doubts have been expressed as to the constitutionality of such a practice.[5] Long before the suggestion took on the current specific formality, Justice Jackson of the United States Supreme Court when sitting *pro tem* as a circuit justice in *Williamson v. United States,* 184 *F.* 2d 280, 282 (2 Cir. 1950), commented:

> Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loathe to resort to it[6] * * *.

However, Justice Douglas sitting in a like capacity affirmed the denial of bail after conviction and pending appeal in *Carbo v. United States,* 82 *S. Ct.* 662, 7 *L. Ed.* 2d 769, application for review denied, 369 *U. S.* 868, 82 S. Ct. 1137, 8 *L. Ed.* 2d 274 (1962), where the lower tribunal had found that if the defendant were released there was "a strong likelihood that witnesses will be further molested and threatened and perhaps even actually harmed." 82 S. Ct. at 668, 7 *L. Ed.* 2d at 775.

---

[5]For example, on the Federal scene, see report of extensive hearings on former Attorney General Mitchell's proposal in *Hearings Before the Subcom. on Constitutional Rights, supra;* also in New York, see *14th Annual Report of the Judicial Conference, supra.*

[6]Others opposing the idea point to the strong indication revealed by studies that an accused who has been detained in jail between his arraignment and the final adjudication of his case is more likely to receive a criminal conviction or jail sentence than an accused who has been free on bail. *Rankin, The Effect of Pretrial Detention,* 39 *N. Y. U. L. Rev.* 641 (1964). The correlation between the pretrial status (jail or bail) and the severity of the sentence after conviction has been described as "extraordinary," the jailed defendant being two or three times more likely to receive a prison sentence. *Foote, The Coming Constitutional Crisis in Bail, supra,* 113 *U. Pa. L. Rev.* at 960.

The approved draft of the *A. B. A. Project on Standards Relating to Pretrial Release, supra,* noted that all the facets of the pretrial detention question had been thoughtfully explored and the Committee concluded that "at this time and on the basis of present knowledge it should not recommend the adoption of preventive detention." § 5.5, *Commentary,* p. 69. Instead it recommended that where it was found necessary the judge should impose "one or more of the following conditions" on the grant of bail:

(i) [R]elease the defendant into the care of some qualified person or organization responsible for supervising the defendant and assisting him in appearing in court. Such supervisor should be expected to maintain close contact with the defendant. to assist him in making arrangements to appear in court and, where appropriate, to accompany him to court. The supervisor should not be required to be financially responsible for the defendant, nor to forfeit money in the event he fails to appear in court;

(ii) place the defendant under the supervision of a probation officer or other appropriate public official;

(iii) impose reasonable restrictions on the activities, movements, associations and residences of the defendant;

(iv) where permitted by law, release the defendant during working hours but require him to return to custody at specified times; or

(v) impose any other reasonable restriction designed to assure the defendant's appearance. § 5.2, p. 18.

See, also, *The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts,* 40 (1967). These conditions closely follow those set out in the *Federal Bail Reform Act of 1966,* 18 *U. S. C. A.* §§ 3146–3152; see the *A. B. A. Project Commentary, supra,* pp. 57–58. The Federal statute specifically adheres to the basic notion that the purpose of bail is to reasonably assure the appearance of the accused when required. 18 *U. S. C. A.* § 3146(a); see *United States v. Alston,* 136 U. S. App. D. C. 334, 420 *F.* 2d 176 (D. C. Cir. 1969), and the conditions in the order for bail in that case directed by the Court of Appeals, *i e.,* relating to (1) an obligation to report immediately for work to a named employer, (2) a direction to re-enroll in the Alcoholic Rehabilitation Clinic

and participate in a satisfactory manner in the prescribed program, (3) to live at a designated public house under supervision as to his activities, (4) not to leave the Washington metropolitan area without permission of the District Court, and (5) to deposit 10% of his net earnings with the court clerk until $500 has been deposited as security for his appearance at trial. At 180 of 420 F. 2d. The same court denied bail on appeal from a narcotics conviction, even though the appeal was not frivolous, where no suitable program existed for supervision and treatment and defendant had a record of convictions for narcotics offenses and crimes frequently committed by addicts seeking funds for narcotics. *Vauss v. United States,* 125 U. S. App. D. C. 23, 365 *F.* 2d 956 (D. C. Cir. 1966). *cf. United States v. Davis,* 37 *F. R. D.* 450 (D. D. C. 1965).[7]

█ Neither the Legislature nor the trial courts of our State have sought thus far to provide for imposition of such conditions on pretrial release. Nor have we had occasion to deal with the problem. It has been argued generally that there are values of public order and social welfare which justify constitutionally some qualifications on bail freedom by way of exercise of the ever present police power; also that such qualifications tend to preserve domestic tranquillity and

---

[7]Pretrial bail in narcotics cases raises an increasingly pressing problem. Experience shows that in many instances when addicts are released on bond, their addiction brings them back to the drugs within a very short time in order to satisfy the craving. Moreover, it is not at all uncommon that such persons engage in various criminal activities in order to finance their addiction. Although the various remedial proposals are not before us in this case, it seems plain that in the future consideration will have to be given to them. What conditions, with respect to supervision or treatment, may be imposed in the bail bond, or whether some form of pretrial commitment in the nature of civil commitment for supervision or treatment in a public facility can be ordered, are matters which demand the attention of the trial courts and particularly of the public authorities whose duty it is to seek out remedial preventive measures to protect the addict against himself and to protect the public against the addict.

the general welfare of the people. There is no specific issue on the subject before us at the moment and so we proceed no further than to say that imposition of conditions on pretrial bail liberty is a matter for the discretion of the trial courts. Of course, the discretion must be exercised reasonably, having in mind that the primary purpose of bail in this State is to insure presence of the accused at the trial, and that the constitutional right to bail should not be unduly burdened.

■ In the present case the authorities cited above satisfy us that the record made on the bail hearing in the trial court would not constitutionally support a denial of bail. Since the crime for which defendant was indicted is no longer a capital offense he is entitled to pretrial release. Additionally, since the trial court imposed no conditions of the nature of those described above (defendant is 18 years of age and has no previous criminal record), and none are suggested to us as necessary, there appears to be no ground for appellate interference with the trial court's order releasing defendant on bail pending trial.

■ But release on bail is not simply a formal or automatic matter. A number of factors must be considered in fixing the amount of the bond: (1) the seriousness of the crime charged against the defendant, the apparent likelihood of conviction and the extent of the punishment prescribed by the Legislature. It may be recognized that the same urge for flight is not present where the death penalty is not involved. But exposure to a life sentence for murder may well stimulate a substantial urge to flee — even if not as intense as where the accused faces the possibility of death. And the urge may intensify in the future if the recent elimination of the death penalty results in a more restrictive parole policy;[8] (2) the defendant's criminal record,

---

[8]In California the homicide statute authorizes the trial court in specified cases of first degree murder convictions to impose a sentence of life imprisonment or in the alternative, life imprisonment

if any, and previous record on bail, if any; (3) his reputation, and mental condition; (4) the length of his residence in the community; (5) his family ties and relationships; (6) his employment status, record of employment and his financial condition; (7) the identity of responsible members of the community who would vouch for defendant's reliability; (8) any other factors indicating defendant's mode of life, or ties to the community or bearing on the risk of failure to appear. See, *A. B. A. Standards Relating to Pretrial Release, supra,* § 5.1 and commentary pp. 54–56; *Task Force Report: The Courts, supra,* at 40; *Note, Bail: An Ancient Practice Reexamined, supra,* 70 *Yale L. J.* at 974–975. Although those elements should be considered, trial courts should not lose constitutional perspective. The amount of bail should not be excessive — even though the controlling test is not the defendant's financial capacity. His indigency although requiring consideration, because inevitably bail discriminates against the poor, cannot of itself outweigh the nature of the crime. On the other hand an excessive bail requirement should not be utilized as a means of confining the accused until trial. The amount of bail required in a given case, where serious offenses, such as murder, are involved, is not an easy decision. But in reaching it, the constitutional right to bail and the presumption of innocence cannot be overlooked.

For the reasons expressed the order of the trial court granting bail is affirmed. The cause is remanded to that court for purposes of fixing the amount thereof.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.

---

without possibility of parole. See, Footnote 45 in *People v. Anderson, supra.*