Commonwealth, Petitioner, *v.* Truesdale.

326

Argued July 29, 1972. Before JONES, C. J., EAGEN,
O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused December
28, 1972.

*James D. Crawford,* Deputy District Attorney, and *H. Rosenberger, II,* Assistant Attorney General, with them *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, petitioner.

*A. Benjamin Johnson, Dennis H. Eisman, Joseph M. Smith* and *Louis Lipschitz,* with them *Abraham T. Needleman, Gerald A. Stein, Jack Levine, Needleman, Needleman, Tabb & Eisman* and *Fitzpatrick & Smith,* for respondent.

OPINION BY MR. JUSTICE EAGEN, November 17, 1972:

On October 20, 1971, Blanche Buchler was shot and killed in front of her home in Philadelphia, Pennsylvania. Three days later respondent, Mack Truesdale, was arrested by the Philadelphia police and charged with murder and conspiracy in connection with the killing. Thereafter, on October 27, 1971, Truesdale was afforded a preliminary hearing and, after the presentation of evidence, was bound over for the grand jury. At this hearing it was further determined that bail should be denied because the proof was evident and the presumption great, and the offense rose to the level of murder in the first degree, and pursuant to Article 1, Section 14 of the Pennsylvania Constitution the offense being a capital one was not bailable. On November 8, 1971, Truesdale petitioned the Court of Common Pleas of Philadelphia for a writ of habeas corpus alleging he was improperly being detained; the petition was subsequently denied with the court finding that his detention was proper. On December 2, 1971, Truesdale was indicted on the charges of murder and conspiracy, in connection with the death of Blanche Buchler, by a

grand jury and is now awaiting trial on the indictments.

Thereafter, certain pretrial proceedings took place and on June 30, 1972, Truesdale made another application for his release on bail. The foundation of his new application rested on the recent decision of the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S. Ct. 2726 (1972), which abolished the death penalty as it theretofore had existed in Pennsylvania. A hearing was held, and the trial court granted bail in the amount of ten thousand dollars.

The Commonwealth immediately filed a petition in this Court requesting the assumption of plenary jurisdiction pursuant to Section 205 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, Art. II, §205, 17 P.S. §211.205,[1] and Truesdale joined in the request. A rule to show cause issued and argument was held on Saturday, July 29, 1972. The sole question presented is whether a defendant who is awaiting trial on the charge of murder, which rises to the level of murder in the first degree, has a right to bail pending trial. We assume plenary jurisdiction and now proceed to a determination of the issue on the merits.

Article 1, Section 14 of the Constitution of Pennsylvania of 1968[2] provides the following with respect to bailable offenses: "All prisoners shall be bailable by

------

[1] Section 205 of the act reads as follows: "Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or justice of the peace of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done."

[2] Prior Constitutions of this Commonwealth have contained identical language with respect to bailable offenses. See Pennsylvania Constitution of 1776, §28; Pennsylvania Constitution of 1790, Art. 9, §14; Pennsylvania Constitution of 1838, Art. 9, §14.

sufficient sureties, unless for capital offenses when the proof is evident or presumption great . . . ."[3]  Consequently, the Constitution of the Commonwealth mandates all persons have a right to be released on bail prior to trial in all cases except those involving capital offenses.  In the recent past this has meant that all persons, except those charged with murder in the first degree,[4] had a right to bail while awaiting trial, subject to the accused giving adequate assurance he would appear for trial.  If a person was charged with murder which rose to the level of murder in the first degree, he could be denied bail when the proof was evident or the presumption great.[5]  This result was dictated by the decisions of this Court which have consistently interpreted the constitutional phrase "capital offense" to mean only murder in the first degree, since this was the only crime for which the death penalty could be imposed.  In *Commonwealth ex rel. Alberti v. Boyle,* 412 Pa. 398, 195 A. 2d 97 (1963),[6] this Court stated:

---

[3] See also Act of March 31, 1860, P. L. 427, §7, as amended, 19 P.S. §51, which provides: "In all cases the party accused, on oath or affirmation, of any crime or misdemeanor against the laws, shall be admitted to bail by one or more sufficient sureties . . . except such persons as are precluded from being bailed by the constitution of this Commonwealth . . . ." See also Pa. R. Crim. P. 4002(2).

[4] Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701.

[5] Cf. *Commonwealth v. Farris,* 443 Pa. 251, 278 A. 2d 906 (1971). See also Note, *Criminal Procedure—Determination of Accused's Right to Bail in Capital Cases,* 7 Vill. L. Rev. 438 (1962).

[6] *Alberti* is apparently the first decision of this Court which interpreted Article 1, §14, but for lower court decisions in accord with *Alberti,* see generally *Commonwealth v. Scarsellato,* 35 Wash. 234 (Washington County 1955) ; *Commonwealth ex rel. v. Manley,* 60 Pa. D. & C. 194 (Lackawanna County 1947) ; *Commonwealth v. Lemley,* 10 P.L.J. 122 (Greene County 1862) ; *Commonwealth ex rel. Chauncey and Nixon v. Keeper of the Prison,* 2 Ashm. 227, 234 (Philadelphia County 1838).

"A 'capital offense' within the meaning of the Constitution means a crime of such a character that the penalty or sentence of death may be imposed even though the crime is punishable by death or life imprisonment, or by a lesser sentence. . . . In other words, a capital offense is a crime for which the death penalty may, but need not be inflicted." Id. at 400, 195 A. 2d at 98.

*Commonwealth v. Lemley* (1862), supra, exhibits an early understanding of the phrase "capital offense" and the subject of bail generally:

"At common law, bail is a *matter of discretion* with the Judges. The Court of Kings Bench had an unlimited power of admitting to bail for all offenses, including treason and murder; but bail was not demandable as a right. Of course, the Judicial discretion was exercised according to established rules. The object of the detention or imprisonment of the prisoner being to secure his forthcoming to abide the sentence of the law, the principle inquiry was, whether a recognizance would effect that end. In seeking an answer to this inquiry, the matters chiefly considered, were, the seriousness of the charge, the nature of the evidence, and the severity of the punishment. Hence, when the offense was capital, and the evidence in support of it was strong, bail was denied because no pecuniary consideration would be likely to secure the attendance of the prisoner, to the probable loss of his life. And the same rule prevailed in offenses not capital, where the evidence was clear, and the punishment was, by a long and rigorous imprisonment; and, for the same reason.

. . . . .

"In Pennsylvania, bail is not a matter of discretion; it is an absolute *right*. It is a right guaranteed by the fundamental law of the State; and where, by that law, a prisoner is entitled to the right, no power exists anywhere, to deprive him of the full benefit of it. It is not necessary to refer to the Act of 1705. The Constitution itself defines the right. The clause in the Constitution of 1798, copied into our present Declaration of rights, provides that 'all prisoners shall be bailable, by sufficient sureties, unless for capital offenses, where the proof is evident or the presumption great.' What is a capital offense within the meaning of this clause? Plainly, an offense for which the death penalty is inflicted; a felony of death." Id at 122.

See also *Commonwealth v. Caye,* 447 Pa. 213, 290 A. 2d 244 (1972) and *Commonwealth v. Keller,* 433 Pa. 20, 248 A. 2d 855 (1969).

With the decision of the United States Supreme Court in *Furman v. Georgia,* supra, and *Commonwealth v. Scoleri,* 432 Pa. 571, 248 A. 2d 295 (1968), cert. granted, 408 U.S. 934, 92 S. Ct. 2852 (1972), as well as this Court's decision in *Commonwealth v. Bradley,* 449 Pa. 19, 295 A. 2d 842 (1972), which cases have invalidated the death penalty as it presently exists in Pennsylvania, we are left to decide if the definition of "capital offense" which we adopted in *Alberti* requires that the bail set for Truesdale was proper.

After extensive study and reflection we rule that the constitutional phrase "capital offense" is a definition of a penalty, i.e., the death penalty, rather than a definition of the crime of murder in the first degree. In *Alberti,* we stated: "In other words, a capital offense is a crime for which the death penalty may, but need not be inflicted" 412 Pa. 400, 195 A. 2d at 98, and in our recent decision of *Commonwealth v. Caye,* supra, Mr. Justice ROBERTS, speaking for the Court stated: " 'A capital offense is a crime for which the death penalty *may* . . . be inflicted.' . . . Only murder in the first degree is so *punishable.*" 447 Pa. 216, 290 A. 2d at 246 [emphasis added].[7] A reading of these cases leads to the conclusion that "capital offense" refers to the punishment or penalty which may be imposed upon the person found guilty of a crime, rather than a definition of a particular crime. Consequently, since there are presently no criminal offenses in the Commonwealth for

---

[7] See also Pa. R. Crim. P. 1100(a) which states: "Capital Case or Crime is one in or for which the death penalty may be imposed." See also Black, Law Dictionary (4th ed. 1951) p. 263: ". . . [A] Capital Case or Crime is one in or for which the death penalty may, but need not necessarily, be inflicted."

which the death penalty may be imposed, there are no "capital offenses"; hence, by mandate of our Constitution, all offenses are bailable prior to trial.

Not only is this result dictated by our own Constitution and the case law interpreting that document, it also follows from a reading of cases from other jurisdictions which have interpreted similar constitutional provisions. In *State v. Johnson,* 61 N.J. 351, 294 A. 2d 245 (1972), and in *Ex Parte Contella,*   S.W. 2d (1972),[8] the Supreme Court of New Jersey and the Court of Criminal Appeals of Texas, respectively, both found by intepretation of constitutional provisions similar to our own that bail was a matter of right in all cases now that the United States Supreme Court has invalidated the death penalty. Moreover, in *State v. Pett,* 253 Minn. 429, 92 N.W. 2d 205 (1958), the Supreme Court of Minnesota was faced with the exact same question we are confronted with after the Minnesota legislature had abolished the death penalty. After determining the term "capital offense" strictly referred to the death penalty, the Court stated: "Where words used in our constitution have a clear and well-defined meaning, there is no room for construction. Neither the courts nor the legislature have a right to substitute for words used in the constitution having a well-defined meaning other words having a different meaning. That is ex-

---

[8] In *Contella,* the Court of Criminal Appeals of Texas stated: "We therefore conclude that bail may no longer be denied on the ground that the offense is a capital offense and the proof is evident. Since the death penalty may not be imposed, there no longer exists a 'capital felony' as defined in Art. 47 V.A.P.C. Likewise, since the death penalty is no longer a possible penalty, it is impossible for the State to offer evidence, in this or any other case, sufficient to establish that the 'proof is evident' as that term is defined in Ex Parte Paul, *supra.* Therefore, there is no case in which bail may be denied under the provisions of Art. 1, Section 11 of the Texas Constitution or Art. 1.07, V.A.C.C.P." S.W. 2d at    .

actly what we would be doing were we to substitute 'murder in the first degree' for 'capital offense.' Murder in the first degree is not a capital offense when it cannot be punished by death. The right to amend the constitution rests exclusively with the people, and, if, constitutionally, bail is to be withheld in cases other than capital offenses at the discretion of the trial court, that change must be brought about by an amendment of the constitution. As the constitution now reads, all crimes are bailable." Id. at 432-33, 92 N.W. 2d 207-08.[9] Lastly, the Supreme Court of Kansas reached the same result in the case of *Ex Parte Ball,* 106 Kan. 536, 188 P. 424 (1920), finding that once the legislature had abolished the death penalty in cases involving murder in the first degree, this crime was no longer a "capital offense" and therefore it was bailable as a matter of right, under the Kansas Constitution.[10]

---

[9] The State, in *Pett,* argued that "capital offense" had reference to the offense, rather than the punishment, as does the Commonwealth in the instant case. The well-reasoned answer of the Court, with which we agree, is as follows: "The argument of the state, adopted by the trial court, is that, inasmuch as murder in the first degree was the only crime punishable by death at the time we abolished capital punishment, the constitution had reference to the offense rather than to the punishment and that murder in the first degree still is murder in the first degree; hence that the trial court now has the same discretion in denying bail to a defendant charged with that offense as it had when the conviction was punishable by death. While there is logic to this argument and the result may well be a desirable one, it is untenable from a constitutional standpoint. In essence, what the state asks us to do is to construe the constitution to read 'except for murder in the first degree' instead of 'except for capital offenses.' " Id. at 430, 92 N.W. 2d 206.

[10] The Court stated:

"The legal effect of the constitutional provision as a whole is equally definite and well settled. All offenses are bailable of right, except those to which the death penalty is affixed, and those to which the death penalty is affixed are bailable unless the proof be evident or the presumption great . . . ."

Moreover, an analysis employed by the Supreme Court of New Jersey in *State v. Johnson*, supra, also dictates this result. In *Johnson*, the Court noted that in a prior decision, *State v. Williams*, 30 N.J. 105, 152 A. 2d 9 (1959), it had held when a man is found guilty of murder in the second degree, such a finding constituted an acquittal of murder in the first degree and if the party won a reversal on appeal, he had a right to bail awaiting retrial, because he was no longer subject to a "capital offense." The *Johnson* Court then went on to discuss its decision in *State v. Wolf*, 46 N.J. 301, 216 A. 2d 586 (1966) stating: "Wolf was convicted of murder in the first degree and the jury recommended life imprisonment. The conviction was reversed for trial errors . . . and retrial was ordered. Prior to retrial on defendant's application the trial court ruled that the State was barred from again seeking the death penalty. On appeal by the State we affirmed, holding that the jury having rendered a judgment against infliction of the death penalty, the issue must be considered as adjudicated and binding for purposes of the forthcoming trial. The distinction drawn between a verdict of guilt of first degree murder which carried the death penalty and such a verdict which imposed

----

. . . .

"The Constitution, which in this respect is self-executing, left the Legislature free to prescribe whatever punishment it saw fit for murder, and all other offenses. The Constitution, however, dealt specifically with the subject of bail, and made all offenses which the Legislature did not see fit to punish capitally bailable. The meaning of the Bill of Rights at the time it was adopted cannot be changed without changing the Constitution itself. This the Legislature is not competent to do. At present, treason is the only capital offense under the laws of this state, and all others are bailable as a matter of right, notwithstanding the statute of 1911." Id. at 540-42, 188 P. at 425-26.

life imprisonment obviously signified that murder which can produce only life imprisonment is not a capital offense, within the meaning of the Constitution." 61 N. J. 356, 294 A. 2d at 248. The decision of this Court in *Commonwealth v. Caye,* supra, and *Commonwealth v. Keller,* supra, are exactly the same as the New Jersey Supreme Court's decision in the *Williams* case. And our decision in *Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969) (imposition of life imprisonment precludes the imposition of the death penalty in a retrial) is substantially the same as the decision in *Wolf.* It follows from our opinions that after a verdict of life imprisonment, upon retrial, the offense is no longer a "capital offense," because the death penalty may not then be imposed. Cf. *Commonwealth v. Caye,* supra. Thus, we agree with the foregoing learned analysis of our sister state.[11]

The fundamental purpose of bail is to secure the presence of the accused at trial.[12] However, in the absence of evidence the accused will flee, certain basic principles of our criminal law indicate bail should be granted, these are: (a) the importance of the presumption of innocence; (b) the distaste for the imposition of sanctions prior to trial and conviction; and (c) the

---

[11] We are not persuaded by the views expressed in *People v. Anderson,* 6 C. 3d 628, 100 Cal. Rptr. 152, 493 P. 2d 880 (1972) and *People ex rel. Dunbar v. District Court,* Colo. , P. 2d (1972).

[12] See *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936) ; *Steel v. Commonwealth,* 7 Watts 454 (1838) ; *Commonwealth v. Lemley,* supra n. 6 (see accompanying quote) ; Pa. R. Crim. P. 4001(a) which provides: "Bail is the security required and given for the release of a person in the custody of the law, conditioned upon a written undertaking that he will appear when required and do all other things stipulated therein." See generally Note, *Bail: An Ancient Practice Reexamined,* 70 Yale L. J. 966 (1961).

desire to give the accused the maximum opportunity to prepare his defense.[13]

The Commonwealth argues that the urge to flee is so great where one faces a possible conviction of murder in the first degree and a sentence of imprisonment for life, that bail should not be allowed in such instances. This argument ignores the mandate of the Pennsylvania Constitution and also fails when analyzed pragmatically. Prior to the invalidation of the death penalty, there was a strong flight urge because of the possibility of an accused forfeiting his life, and the framers of our Constitution must have felt that if a person were accused of a crime and had to risk the possibility of receiving the death penalty or forfeiting

---

[13] The United States Supreme Court set forth these basic reasons in *Stack v. Boyle*, 342 U.S. 1, 72 S. Ct. 1 (1951), wherein it is stated:

"This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See Hudson v. Parker, 156 U.S. 277, 285 (1895) [15 S. Ct. 450, 453, 39 L. Ed. 424]. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

"The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Ex Parte Milburn, 9 Pet. 704, 710 (1835) [9 L. Ed. 280]." Id. at 4-5, 72 S. Ct. at 3.

Mr. Justice JACKSON in a separate opinion stated: "The practice of admission to bail, as it has evolved in Anglo-American law, is not a device for keeping persons in jail upon mere accusation until it is found convenient to give them a trial. On the contrary, the spirit of the procedure is to enable them to stay out of jail until a trial has found them guilty. Without this conditional privilege, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in consulting counsel, searching for evidence and witnesses, and preparing a defense." Id. at 7-8, 72 S. Ct. at 5.

bail, he would obviously choose the latter. However, they did not feel the urge to flee was as great where the maximum penalty was life imprisonment, as indicated by the failure to draft the Constitution to read, bail may be denied in cases of "capital offenses or life imprisonment."[14] Thus, with the maximum penalty for murder in the first degree being life imprisonment, we believe the urge to flee is diminished. There are a number of criminal offenses in the Commonwealth which carry a possible penalty of life imprisonment,[15] and the offenses have traditionally been bailable.

We do not intend by this opinion that pretrial bail may not be denied regardless of the circumstances. As noted before, the right to release before trial is conditioned upon the accused giving adequate assurance he or she will appear for trial. If upon proof shown, the court reasonably concludes the accused will not appear for trial regardless of the character or the amount of the bail, then in such an instance bail may properly be denied, regardless of the nature of the charges. The

---

[14] In *Johnson*, supra, the New Jersey Supreme Court stated: "The underlying motive for denying bail in capital cases was to secure the accused's presence at the trial. In a choice between hazarding his life before a jury and forfeiting his or his sureties' property, the framers of the many State Constitutions felt that an accused would probably prefer the latter. But when life was not at stake and consequently the strong flight-urge was not present, the framers obviously regarded the right to bail as imperatively present." 61 N. J. 360, 294 A. 2d at 250.

[15] See e.g., *Treason*, Act of June 24, 1939, P. L. 872, §201, 18 P.S. 4201; *Kidnapping*, Act of June 24, 1939, P. L. 872, §723, 18 P.S. 4723; *Fourth Offenders under the Habitual Criminal Act*, Act of June 24, 1939, P. L. 872, §1108, 18 P.S. §5108; *Rape*, Act of June 24, 1939, P. L. 872, §721, as amended, Act of May 12, 1966, Special Session No. 3, P. L. 84, §1, 18 P.S. §4721; *Assault with Intent to Ravish, Second Offense*, Act of June 24, 1939, P. L. 872, §722, as amended, Act of May 12, 1966, Special Session No. 3, P. L. 84, §1, 18 P.S. §4722.

burden of proof is upon the Commonwealth.[16]  This decision must be reached by the application of certain criteria, such as: (1) general reputation in the community; (2) past record; (3) past conduct while on bail; (4) ties to the community in the form of a job, family, or wealth. See Pa. R. Crim. P. 4005. However, the trial court must also consider that modern police methods, such as, exchange of photographs and fingerprints, act as a deterrent to flight.

The Commonwealth also urges us to rule that bail may be denied to protect the community from further criminal activity on the part of the accused, or in order to safeguard the well-being of witnesses in the case. We realize this is truly a pressing problem and the rights of the public and of witnesses to be protected from harm is of the greatest concern, however, what the Commonwealth is really asking us to do is provide for a system of preventive detention.  This would be an unprecedented step on our part, and one that is fraught with constitutional problems in terms of due process. It would also be contrary to the whole foundation of our penal system, since our laws punish for past offense, rather than incarcerate a person to prevent future offenses.  Moreover, the Commonwealth's suggestion requires a presumption on our part that an accused is guilty, rather than innocent, and also that he will commit additional crimes if released on bail. Likewise, the Commonwealth's suggestion indicates a lack of understanding of the purpose of the bail system. Bail was conceived as a means of securing the accused's pres-

---

[16] For example, if on a past offense the accused had jumped bail, it would seem that the judge could properly deny bail, or if after committing a murder the accused had fled the Commonwealth and was returned to the authorities of the Commonwealth under a fugitive warrant either by the police of another state or by federal officials bail could properly be denied.

ence at trial, while at the same time according him liberty prior to trial so he could prepare his case. The traditional decision to deny bail was not a means of keeping an accused confined to protect the public, it was a means of assuring he would appear at trial. In short, the Commonwealth is asking us to apply the procedure of granting or denying bail to a purpose it was not designed to fulfill, i.e., pretrial incarceration as a preventive form of punishment for an act unconsummated. In this regard, Mr. Justice JACKSON, of the United States Supreme Court, sitting as a circuit justice once stated: "The Government's alternative contention is that defendants, by misbehavior after conviction, have forfeited their claim to bail. Grave public danger is said to result from what they may be expected to do, in addition to what they have done since their conviction. If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it . . ." *Williamson v. United States,* 184 F. 2d 280, 282 (1950). Thus, anticipated criminal activity alone cannot stand as a grounds for the denial of bail. This, however, is not to say it cannot be considered in setting the amount of bail[17] in conjunction with the aforementioned ele-

---

[17] In *Johnson,* supra, it was noted: "But release on bail is not simply a formal or automatic matter. A number of factors must be considered in fixing the amount of the bond: (1) the seriousness of the crime charged against the defendant, the apparent likelihood of conviction and the extent of the punishment prescribed by the Legislature. It may be recognized that the same urge for

ments in determining if the accused will flee. Moreover, it may be considered by a trial judge in setting the terms of bail,[18] but as the sole ground for the absolute denial of bail it is invalid.

---

flight is not present where the death penalty is not involved. But exposure to a life sentence for murder may well stimulate a substantial urge to flee—even if not as intense as where the accused faces the possibility of death. And the urge may intensify in the future if the recent elimination of the death penalty results in a more restrictive parole policy; (2) the defendant's criminal record, if any, and previous record on bail, if any; (3) his reputation, and mental condition; (4) the length of his residence in the community; (5) his family ties and relationships; (6) his employment status, record of employment and his financial condition; (7) the identity of responsible members of the community who would vouch for defendant's reliability; (8) any other factors indicating defendant's mode of life, or ties to the community or bearing on the risk of failure to appear." 61 N. J. 364-65, 294 A. 2d at 364-65. Obviously, the Commonwealth would have to argue he has a propensity to commit future crimes based on his past record.

[18] Such terms of bail can be found in Standards Relating to Pretrial Release, A.B.A. Project on Minimum Standards for Criminal Justice, §5.2, p. 18 (Approved Draft 1968), which states:

"(b) Where conditions on release are found necessary, the judicial officer should impose one or more of the following conditions:

"(i) release the defendant into the care of some qualified person or organization responsible for supervising the defendant and assisting him in appearing in court. Such supervisor should be expected to maintain close contact with the defendant, to assist him in making arrangements to appear in court and, where appropriate, to accompany him to court. The supervisor should not be required to be financially responsible for the defendant, nor to forfeit money in the event he fails to appear in court;

"(ii) place the defendant under the supervision of a probation officer or other appropriate public official;

"(iii) impose reasonable restrictions on the activities, movements, associations and residences of the defendant;

"(iv) where permitted by law, release the defendant during working hours but require him to return to custody at specified times; or

For the aforementioned reasons and because the instant record is absent of proof to warrant the conclusion Truesdale will not appear for trial, the order of the trial court granting him release on bail pending trial is affirmed.

It is so ordered.

Mr. Chief Justice JONES dissents.

---

"(v) impose any other reasonable restriction designed to assure the defendant's appearance."

Moreover, the A.B.A. also recommends the following at §5.5, p. 20, where the accused may commit a serious crime or he may threaten witnesses.

"5.5 Prohibition of wrongful acts pending trial.

"Upon a showing that there exists a danger that the defendant will commit a serious crime or will seek to intimidate witnesses, or will otherwise unlawfully interfere with the orderly administration of justice, the judicial officer, upon the defendant's release, may enter an order:

"(a) prohibiting the defendant from approaching or communicating with particular persons or classes of persons, except that no such order should be deemed to prohibit any lawful and ethical activity of defendant's counsel;

"(b) prohibiting the defendant from going to certain described geographical areas or premises;

"(c) prohibiting the defendant from possessing any dangerous weapon, or engaging in certain described activities or indulging in intoxicating liquors or in certain drugs;

"(d) requiring the defendant to report regularly to and remain under the supervision of an officer of the court."