239 N.J. Super. 507 (1990)
571 A.2d 1023
STATE OF NEW JERSEY
v.
ANTHONY FANN, DEFENDANT.
STATE OF NEW JERSEY
v.
TERRY JEROME JOHNSON, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided January 18, 1990.
*509 James A. Ronca for plaintiff (Stephen G. Raymond, Prosecutor of Burlington County, attorney).
David P. Jacobs for defendants.
HAINES, A.J.S.C.
This opinion considers bail procedures in criminal cases. It holds that the fixing of bail is a "critical stage" in a criminal prosecution which requires courts to honor defendants' constitutional rights to counsel, to appear in person and to due process.
Anthony Fann is charged with aggravated assault, possession of a knife for an unlawful purpose and possession of a weapon by a convicted person. He has been indicted. Bail was set at the time of his arrest. This court, at the time of Fann's first appearance, set bail at $25,000, with surety, denying a ten *510 percent cash arrangement. Three bail reduction motions have been filed on his behalf. The first motion, heard on June 9, 1989, was denied. A second motion, heard on August 18, 1989, resulted in a reduction of bail to $5,000 with full surety. A further motion, heard on October 6, 1989, resulted in a denial of any further reduction. He is in jail.
Terry Jerome Johnson is charged with unlawful possession of a weapon and theft, a disorderly persons offense. The indictable possession charge has been downgraded and returned to a municipal court for final action. Trial is pending. This court fixed initial bail at $5,000 with surety and denied permission for a cash payment of ten percent. Later, on review, bail was reduced to $1,000 with a ten percent cash payment allowed. He has been unable to make bail and is confined in the Burlington County Jail. No bail reduction motions have been made on his behalf.[1]
Counsel for defendants moves to reduce their bail, raising various procedural questions in that connection.
The State argues that the issues involved here are moot because both defendants are represented by counsel at the present time, have had their bail reviewed and have the capacity to bring motions for further review. These arguments, however, overlook the fact that defendants are in jail and have been unable to post the bail set by the courts. Since they have the right to file motions for further bail review, as they have, they are entitled to raise questions relating to the review process as it has affected their present bail requirements and as it affects their motion. Consequently, the issues are not moot.

A. The Purpose of Bail.

The purpose of bail is to guarantee the appearance of defendant in court for trial and pretrial events. It is not to be used *511 for punishment; high bail is not to be used as a device to eliminate any supposed risk of further criminal activity  socalled "preventive detention." State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972). In Johnson, the Supreme Court said:
Historically ... in New Jersey the right of the individual to bail before trial is a fundamental one. [at 355, 294 A.2d 245]
....
Expressed in pragmatic terms this right to bail means that the accused has the right to pretrial liberty on such bond in such amount as in the judgment of the trial court under the circumstances of the case will insure his appearance at the trial. If, however, the court is satisfied from the evidence presented on the application for bail that regardless of the amount of bail fixed, the accused if released will probably flee to avoid trial, bail may be denied. [at 359-360, 294 A.2d 245]
....
... an excessive bail requirement should not be utilized as a means of confining the accused until trial. [at 365, 294 A.2d 245]
The A.B.A. Standards Relating to Pretrial Release (Rev. 1985) 10-5.3 provide in part:
The sole purpose of monetary conditions is to assure the defendant's appearance. Monetary conditions should not be set to punish or frighten the defendant, to placate public opinion, or to prevent anticipated criminal conduct.
Standard 10-5.4 provides rules for preventive detention, thus suggesting its permissible use. Our courts have not sanctioned its use and it is not a consideration here.

B. The Significance of Bail.

The right to bail is a constitutional right. Our Constitution (1947), Art. 1, pars. 11 and 12 provides:
No person shall, after acquittal, be tried for the same offense. All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great.
....
Excessive bail shall not be required, excessive fines shall not be imposed, and cruel and unusual punishments shall not be inflicted.
*512 The right to bail was established first by statute and later incorporated in our 1844 and 1947 Constitutions. Johnson, supra, 61 N.J. at 354, 294 A.2d 245.
The Eighth Amendment of the United States Constitution provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
R. 3:26-1 refers to "the general policy against unnecessary sureties and detention."
Johnson noted that: "As of 1970 the Constitutions of 37 States by language similar to ours had established such a right to bail in non-capital cases." 61 N.J. at 355, 294 A.2d 245. Also that "the framers [of the various Constitutions] obviously regarded the right to bail as imperatively present. It was considered that pretrial release on non-capital charges was a fundamental right founded in freedom and human dignity, reflected in the everpresent presumption of innocence, and requiring firm articulation in the Constitutions." Id. at 360, 294 A.2d 245.
The presumption of innocence, a basic presumption in our system of criminal law, is a paramount consideration when fixing bail, perhaps somewhat diminished by the requirement that probable cause be present before an arrest is permitted. In Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), the Court stated that "the presumption of innocence ... would lose its meaning" if there were no right to bail. In Johnson the Supreme Court said: "To deny bail ... is to punish an accused before conviction, and to ignore the presumption of innocence which attends every citizen charged with crime...." 61 N.J. at 355-356, 294 A.2d 245. An important consideration is the need for trial preparation; pretrial release "permits the unhampered preparation of a defense...." Stack, 342 U.S. at 4, 72 S.Ct. at 3.
The American Bar Association, in the introduction to its Standards Relating to Pretrial Release (Approved Draft 1968) *513 at 2-3, underlined the significance of bail from the standpoint of a defendant:
The consequences of pretrial detention are grave. Defendants presumed innocent are subjected to the psychological and physical deprivations of jail life, usually under more onerous conditions than are imposed on convicted defendants. The jailed defendant loses his job if he has one and is prevented from contributing to the preparation of his defense. Equally important, the burden of his detention frequently falls heavily on the innocent members of his family. Moreover, there is strong evidence that a defendant's failure to secure pretrial release has an adverse effect on the outcome of his case. Studies in Philadelphia, the District of Columbia and New York all indicate that the conviction rate for jailed defendants materially exceeds that of bailed defendants. For example, of defendants charged with grand larceny forty-three percent of those on bail pending trial were convicted while seventy-two percent of those in jail were convicted. [Citation omitted] In terms of the sentence imposed on convicted persons, the bailed defendant is far more likely to receive probation; his jailed counterpart, having been unable to demonstrate his reliability under supervision, more frequently goes to prison. [Citation omitted] Of course some of the factors, such as strong evidence of guilt or a long criminal record, that lead to high bail and hence detention, will also cause a court to find the defendant guilty and to sentence him to prison rather than to give him probation. But a recent study which attempted to hold other causative factors constant indicates that there is a strong relationship between detention and unfavorable disposition. [Citation omitted]
The Johnson court pointed to similar consequences:
Others opposing the idea point to the strong indication revealed by studies that an accused who has been detailed in jail between his arraignment and the final adjudication of his case is more likely to receive a criminal conviction or jail sentence than an accused who has been free on bail. Rankin, The Effect of Pretrial Detention, 39 N.Y.U.L.Rev. 641 (1964). The correlation between the pretrial status (jail or bail) and the severity of the sentence after conviction has been described as "extraordinary," the jailed defendant being two or three times more likely to receive a prison sentence. Foote, The Coming Constitutional Crisis in Bail, supra, 113 U.Pa.L.Rev. at 960. [61 N.J. at 361, n. 6, 294 A.2d 245]
The Foote article, cited in Johnson, points to the "shocking discrepancy which disadvantages the poor in our administration of criminal justice," referring primarily to bail practices. Foote, op. cit, supra at 960. Studies, Foote reports, establish three things which are "bound to pose most serious constitutional questions":
First, it has been established that pretrial imprisonment of the poor solely as a result of their poverty, under harsher conditions than those applied to *514 convicted prisoners, so pervades our system that for a majority of defendants accused of anything more serious than petty crimes, the bail system operates effectively to deny rather than to facilitate liberty pending trial.
Second, it is also apparent that but for their poverty a substantial proportion of these jailed indigent defendants would never suffer any imprisonment because, after serving their pretrial jail term, they are either not convicted or the disposition of their cases does not include imprisonment.
Third, there is an extraordinary correlation between pretrial status (jail or bail) and the severity of the sentence after conviction, the jailed defendant being two or three times more likely to receive a prison sentence. The last finding raises difficult problems of evaluation, for some other variable may be an important factor in causing both the pretrial jail status and the more severe sentence, although the most recent study shows that the ratio holds constant even when some of the more obvious variables are controlled. [Ibid.]

C. Bail Procedures.

Our rules provide little procedural guidance for courts addressing bail matters. The only references are the following:
R. 3:4-1  provides for procedure after arrest. Makes no reference to bail except to require the judge before whom an arrested person is taken to advise him or her of the rights provided in accordance with R. 3:4-2.
R. 3:4-2  covers "first appearances." Its only reference to bail is in its last sentence which provides: "The court shall admit the defendant to bail as provided in R. 3:26 and R. 7:5."
R. 3:4-3  deals with probable cause hearings and merely provides:
Whether or not the court finds probable cause, it shall continue in effect any bail previously posted in accordance with R. 3:26 or any other condition of pretrial release not involving restraints on liberty; and any bail taken by the court shall be transmitted to the county clerk. If the defendant is discharged for lack of probable cause and an indictment is not returned within 120 days, the bail shall thereafter be returned and conditions of pretrial release, if any, terminated.
R. 3:26-1  entitled "Right to Bail Before Conviction" provides:
(a) Persons Entitled; Standards for Fixing. All persons, except those charged with crimes punishable by death when the prosecutor presents proof that there is a likelihood of conviction and reasonable grounds to believe that the death penalty may be imposed, shall be bailable before conviction on such terms as, in the judgment of the court, will insure their presence in court when *515 required, having regard for their background, residence, employment and family status and, particularly, the general policy against unnecessary sureties and detention. In its discretion the court may order the release of a person on his own recognizance and may impose terms or conditions appropriate to such release.
(b) On Failure to Indict. If a person committed for a crime punishable by death shall not be indicted within 3 months after his commitment, a judge of the Superior Court or county court, for good cause shown, may admit him to bail.
(c) On Failure to Move Indictment. If an indictment or accusation shall not be moved for trial within 6 months after arraignment, a judge of the Superior Court or county court, for cause shown, may discharge the defendant upon his own recognizance.
(d) Extradition Proceedings. Where a person has been arrested in any extradition proceeding, he may be admitted to bail except where he is charged with a crime punishable by death.
R. 3:26-2  authorizes judges to admit to bail.
R. 3:26-3  provides for bail for witnesses.
R. 3:26-4  provides for execution of bail documents, deposit of monetary bail, limitations on sureties, use of real estate, records and ten percent cash bail. The last subject is covered in the following language:
Whenever bail is set pursuant to R. 3:26-1, unless the order setting bail specifies to the contrary, bail may be satisfied by the deposit in court of cash in the amount of ten percent of the amount of bail fixed and defendant's execution of a recognizance for the remaining ninety percent. No surety shall be required unless the court fixing bail specifically so orders. When cash equal to ten percent of the bail fixed is deposited pursuant to this rule, if the cash is owned by someone other than the defendant, the owner shall charge no fee for the deposit other than lawful interest and shall submit an affidavit with the deposit so stating and also listing the names of any other persons for whom the owner has deposited bail.
R. 3:26-5  provides for justification of sureties.
R. 3:26-6  provides for forfeiture of bail.
R. 3:26-7  provides for exoneration of sureties.
R. 7:5  provides for bail in the municipal courts. Makes Superior Court R. 3:26 applicable to the municipal courts. Permits the clerk of the municipal court to set bail "in the absence of the judge." When both judge and clerk are absent, bail may be fixed "by any other person authorized by law to *516 admit persons to bail other than the arresting officer, designated for such purpose by the judge."
A defendant named in a criminal complaint is not to be arrested on a warrant except in connection with certain charges enumerated in R. 3:4-1(b). Even as to those charges the rule provides that a judge may issue a summons instead of a warrant upon determining "that the defendant will appear in response to a summons." It is only when certain conditions enumerated in R. 3:4-1(d) exist that an officer has the discretion to issue a warrant in connection with lesser charges. The decision to issue a summons eliminates the need to set bail.

(1) Bail Procedures in Burlington County.

When a defendant is arrested in Burlington County, bail may be set at once by a municipal court judge or clerk or a Superior Court judge. A duty prosecutor and a duty judge are available for assistance at all times when court is not in session. Occasionally, arrested persons are committed to jail without bail.[2]
Every defendant placed in jail for an indictable offense is interviewed on the next working day (and on weekends) by a member of the bail unit of the criminal case management office. Defendants incarcerated on non-indictable charges, who in the judgment of the bail officer appear to be eligible for prompt release, are interviewed at the same time. Basic information is obtained from each defendant who, in most cases, is not yet represented. This information includes: the nature of the charges, the municipality in which the charges were brought, defendant's place of residence, current employment, marital status, education and names of persons who can provide supplemental information, if needed, and through whom defendant can be reached. In case a defendant claims to be indigent and wishes to be represented by assigned counsel, financial information is obtained. When appropriate, the officer may speak *517 with the law enforcement officers involved in the arrest and with friends, relatives and employers to obtain additional information. Great care is taken to limit bail officers' questions to those needed for the purpose of setting bail and determining indigency; questions about the criminal event are studiously avoided. This procedure does not raise Fifth Amendment problems. State v. Cunningham, 153 N.J. Super. 350, 352, 379 A.2d 860 (App.Div. 1977). The bail officer prepares a report reflecting the information obtained to which is attached a "rap sheet," setting forth each defendant's criminal history, if any. The report contains a bail recommendation.
Jailed defendants are provided with a "first appearance," as required by R. 3:4-2, before a Superior Court judge on the next working day following their incarceration. Few defendants are represented by counsel at that time and nearly all assignments of counsel are made later. At that time the judge advises defendants of their rights, including the right to counsel and the right of indigent defendants to have counsel assigned. A bail report is available to the judge who will fix bail when none has been set (sometimes in chambers, otherwise in open court) or, if bail has been set, will advise defendant as to its terms and may (rarely) review the bail conditions. Reasons for the arrangement are not always articulated.
Unrepresented defendants attending a "first appearance" hearing, except on rare occasions, are not given an opportunity to speak. They are warned that their statements may be used against them, that they should not speak until they have the advice of counsel. The great majority of these defendants will be represented by the public defender by later assignment.
Bail for incarcerated defendants is reviewed by a Superior Court judge on a regular basis. The judge may discuss the cases listed for review with a knowledgeable member of the bail unit or may review bail reports independently in advance of review hearings; alternatively, the bail report may be considered for the first time in the course of the hearing. The case *518 list for bail reviews is compiled on the basis of informal requests from defense counsel, recommendations of the bail unit and sua sponte decisions of the judge to whom bail reviews are assigned. On rare occasions formal motions by defense counsel are filed. Notice of all review hearings is provided to the prosecutor and to defense counsel.
Bail hearings are conducted in the presence of defense counsel and the prosecutor. Jailed defendants are not brought to court, thus avoiding the complexities of prisoner transfers and the security risks which attend them.
Bail reports provided to the hearing judge usually contain no reasons upon which prior bail arrangements were based. Reasons for issuing a warrant instead of a summons, for denying ten percent bail, for setting a particular amount of bail and for imposing particular conditions do not appear on the report and, in almost all cases, are unavailable. Reasons for bail actions taken at a review hearing are placed on the record in open court but rarely appear on bail reports.

D. The Right to Counsel.

The Sixth Amendment right to counsel arises upon "the initiation of adversary judicial criminal proceedings ... [when] the defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), held that a right to be represented by counsel became available at any "critical stage" of criminal proceedings. It held that a preliminary hearing was a critical stage. [at 11, 90 S.Ct. at 2004] Our Supreme Court discussed the right of counsel in State v. Sugar, 84 N.J. 1, 417 A.2d 474 (1980), saying:
The Sixth Amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution establish a defendant's right to the assistance of counsel in criminal prosecutions. Those guarantees recognize the obvious but important truth that "the average defendant does not have the *519 professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty...." Without the guiding hand of counsel, an innocent defendant may lose his freedom because he does not know how to establish his innocence. Trained counsel is also necessary to vindicate fundamental rights that receive protection from rules of procedure and exclusionary principles. Where the doctrine supporting those rights "has any complexities the untrained defendant is in no position to defend himself...." Because the assistance of counsel is essential to insuring fairness and due process in criminal prosecutions, a convicted defendant may not be imprisoned unless counsel was available to him at every "critical" point following "the initiation of adversary judicial criminal proceedings." [at 15-16, 417 A.2d 474; citations omitted]
Sugar also stressed the requirement that "counsel must be effective as well as available." It said:
Because the Constitution requires the assistance of counsel and not merely his physical presence, counsel must be effective as well as available. The right to counsel would be an empty assurance if a formal appearance by an attorney were sufficient to satisfy it. The circumstances under which a lawyer provides counsel must not "preclude the giving of effective aid in the preparation and trial of the case." "A defense attorney's representation must be `untrammeled and unimpaired' ..." If counsel is not "reasonably competent," or if counsel's ability to be a vigorous partisan has been curtailed, then the assistance provided is not constitutionally adequate. [Id. at 17, 417 A.2d 474; citations omitted]
The setting of bail certainly is a "critical stage" in the criminal proceedings. It is an action that occurs after adversary criminal proceedings have been commenced. Its importance to defendant in terms of life and livelihood cannot be overstated. The effect on family relationships and reputation is extremely damaging. Failure of pretrial release causes serious financial hardship in most cases. Jobs and therefore income are lost. The immediate consequence of the absence of bail or the inability to make bail  deprivation of freedom  standing alone, is critically consequential. Being jailed, for however short a time, is a significantly unpleasant experience. There are other consequential results. As we are told in the introductory remarks to the A.B.A. Standards, in Johnson, supra, 61 N.J. at 361, 294 A.2d 245, and by Foote, op. cit., supra, the prospect of conviction is greatly increased when an accused is jailed between the time of arrest and final adjudication; so is the severity of sentence. The opportunity to consult with *520 counsel, to find witnesses, to obtain evidence and, in general, to prepare a defense is clearly restricted when a defendant is kept in jail. Coleman, in dealing with the right to counsel, noted that "counsel can also be influential ... in making effective arguments for the accused on such matters as ... bail." 399 U.S. at 9, 90 S.Ct. at 2003.
It is therefore apparent that a defendant has a right to counsel in connection with bail proceedings. Counsel can provide procedural protections, enhanced information to the court and legal argument. These are important to the ultimate bail-setting decision, and therefore, to the rights of defendant. However, the stage at which bail setting requires the presence of counsel, absent a waiver of the right, must be subject to certain practical considerations if the rights of defendants are to be protected properly.
The moment a defendant is arrested surely is "critical" but counsel can rarely be present. In most cases immediate arrangements for representation, for example, in connection with the setting of bail, are impossible. As to indigent defendants, it is necessary that a determination of indigency be made and that counsel be assigned. This takes time. The same is true at any stage in the proceedings to and including the time of the first appearance. That appearance is arranged very promptly  on the next working day after the arrest. Among other things, its purpose is to advise defendant of the right to counsel and to assigned counsel in case of indigency. It is impractical, inappropriate and contrary to the interest of defendants to require the appearance of counsel for bail purposes until after the first appearance has been held.[3] For present purposes the "critical stage" in bail-setting proceedings, the time when representation must be made available, if not knowingly *521 and intelligently waived, is at the first bail review held after the first appearance.

E. The Right of Defendant to be Present When Bail is Set.

The question of defendant's right to be present at any particular criminal proceeding involving him or her is linked, once again, to the "critical stage" definition. If the setting of bail represents a "critical stage" in the criminal proceedings, defendant has a right to be present when those proceedings take place. This is a due process right, recognized in Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) in which the Court said:
The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-106 [54 S.Ct. 330, 332, 78 L.Ed. 674] (1934). Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," id. at 106-107, 54 S.Ct. at 332, due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," id. at 108, 54 S.Ct. at 333. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. [107 S.Ct. at 2667]
We have seen that setting bail is a "critical stage" in a criminal proceeding at which defendants have a right to counsel. It is no less critical with respect to their right to be present when bail is set.
The Burlington County practice, however, permits bail review to be conducted in the absence of the defendant, without a waiver of the right to appear, so long as defense counsel is present. I conclude that this procedure is not permissible. The bail review hearing is a "critical stage" in the proceeding. Defendant has a due process right to be present. That becomes obvious when defendant's right to represent himself or herself, and therefore to participate in bail proceedings, is recognized. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, *522 45 L.Ed.2d 562 (1975). It is illogical to recognize the right to be present without counsel while denying the right to be present with counsel.
There is also the question of discrimination. Defendants who have been released on bail are free to attend any and every court hearing involving their cases. These defendants, able to attend such hearings, have had bail set at a level which they can accommodate. Incarcerated defendants who are not permitted to appear at a bail hearing are incarcerated because they cannot meet bail requirements. The poor, especially, are therefore disadvantaged. That bail "inevitably ... discriminates against the poor" is recognized in Johnson, supra, 61 N.J. at 365, 294 A.2d 245, and strongly underlined by Foote, op. cit., supra. The fact that bail itself discriminates is no reason to permit the hearing process to discriminate as well.

F. The Liberty Interest; Due Process.

It is defendants' claim that their right to bail, a constitutional right, "implicates a liberty interest that is protected by the Due Process Clause" of the Federal Constitution, citing Vitek v. Jones, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980). Once the liberty interest is recognized "due process protections are necessary `to insure that the state-created right is not arbitrarily abrogated.'" Id. at 489, 100 S.Ct. at 1261.
This interest has not been recognized, expressly, in any New Jersey decision. Defendants, therefore, argue for its application by analogy. The argument is persuasive. The defense brief makes the point:
This "liberty interest" has been found in parole revocation proceedings, Morrissey v. Brewer, 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972), probation revocation proceedings, Gagnon v. Scarpelli, 411 U.S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656] (1973), a state-created right to good time credits, Wolf v. McDonnell, 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974), placing a prisoner in administrative segregation, Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the decision to grant or deny parole, Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 [99 S.Ct. 2100, 60 L.Ed.2d 668] (1979), and *523 a full step reduction in parole eligibility, New Jersey Parole Board v. Byrne, 93 N.J. 192 [460 A.2d 103] (1983).
The right to be released from jail, to be free, particularly while preparing for trial, is surely as important as the right to remain free, a right clearly involved in parole and probation revocation hearings. It is equivalent to the right to be paroled and of greater significance than a jailed defendant's right to good time credits, to avoidance of administrative segregation and to a reduction in parole eligibility. Johnson described the right to bail as a "fundamental right founded in freedom and human dignity." 61 N.J. at 360, 294 A.2d 245. To say that the right to bail is not a liberty interest would deny the obvious meaning of these words.
Morrissey recognized the following due process rights in connection with parole revocation hearings:
1. Written notice of the claimed parole violations.
2. Disclosure of the evidence against the parolee.
3. An opportunity to be heard and to present witnesses and documentary evidence.
4. The right to confront and cross examine witnesses absent good cause to the contrary.
5. A "neutral and detached" hearing body.
6. A written statement by the fact finders as to the reasons for revoking parole. 408 U.S. at 489, 92 S.Ct. at 2604.
Gagnon recognized these rights as well and added the requirement that counsel be appointed when fundamental fairness so required. 411 U.S. at 790, 93 S.Ct. at 1763.
Clearly, the liberty interest for which defendants argue is present with respect to bail procedures.
The conclusions reached here, that a defendant in a criminal proceeding has a right to counsel, a right to be present at and a liberty interest in the setting of bail, requires changes in some of the procedures now in place in this county. Otherwise, constitutional demands will not be met.

*524 G. Appropriate Bail Procedures.

1. The initial bail decision.

It is impractical and unfair to defendants to expect or require counsel to be present for bail purposes immediately after an arrest. Defendant's interest is in the prompt setting of reasonable bail. It is also impractical and contrary to the interest of defendants to require their presence when bail is set initially. Bail arrangements are made by telephone in many cases. Arresting officers call duty prosecutors who consult duty judges. Lawyers sometimes initiate calls. Involving unrepresented defendants in these calls would delay the fixing of bail and delay is very undesirable. A prompt bail review provides the appropriate avenue for satisfaction of the constitutional rights to which defendant is entitled.
It is, however, necessary that the judge or other authorized person setting initial bail provide a written record of the reasons upon which the decision is based. Morrissey, for example, required a written statement of reasons; so did Gagnon. Our system of justice has always demanded reasons in support of decisions, so that the decisions may be understood and accepted. Any review by way of reconsideration or appeal must be based upon reasons. A decision without reasons is dictatorial. It permits the decider to conceal the true motivation for the decision, to dispose secretly of issues on the basis of personal bias or caprice.
The reasons given must address the amount of bail fixed, the conditions imposed, the use of a warrant instead of a summons and the disallowance of ten percent bail, if ten percent was denied. The latter requirement is underlined in State v. Casavina, 163 N.J. Super. 27, 394 A.2d 142 (App.Div. 1978), in which the court said that a court may deny ten percent bail only "for sound reasons bottomed on sufficient findings specifically articulated by the trial judge." Id. at 31, 394 A.2d 142. Reasons for setting a particular amount of cash bail are particularly critical because they are so difficult to articulate. Great differences *525 in monetary amounts of bail set in a given case at successive review hearings provide the appearance of personal bias on the part of the different bail judges involved. It is time for insistence upon a rational approach, achievable only if judges are required to provide reasons for their actions.
The reasons requirement need not be burdensome. A brief written statement placed in the file of the case or attached to the bail report will suffice. Johnson provides helpful guidelines:
But release on bail is not simply a formal or automatic matter. A number of factors must be considered in fixing the amount of the bond: (1) the seriousness of the crime charged against the defendant, the apparent likelihood of conviction and the extent of the punishment prescribed by the Legislature. It may be recognized that the same urge for flight is not present where the death penalty is involved. But exposure to a life sentence for murder may well stimulate a substantial urge to flee  even if not as intense as where the accused faces the possibility of death. And the urge may intensify in the future if the recent elimination of the death penalty results in a more restrictive parole policy; (2) the defendant's criminal record, if any, and previous record on bail, if any; (3) his reputation, and mental condition; (4) the length of his residence in the community; (5) his family ties and relationships; (6) his employment status, record of employment and his financial condition; (7) the identity of responsible members of the community who would vouch for defendant's reliability; (8) any other factors indicating defendant's mode of life, or ties to the community or bearing on the risk of failure to appear. See, A.B.A. Standards Relating to Pretrial Release, supra, sec. 5.1 and commentary pp. 54-56; Task Force Report: The Courts, supra, at 40; Note, Bail: An Ancient Practice Reexamined, supra, 70 Yale L.J. at 974-975. Although those elements should be considered, trial courts should not lose constitutional perspective. The amount of bail should not be excessive  even though the controlling test is not the defendant's financial capacity. His indigency although requiring consideration, because inevitably bail discriminates against the poor, cannot of itself outweigh the nature of the crime. On the other hand an excessive bail requirement should not be utilized as a means of confining the accused until trial. The amount of bail required in a given case, where serious offenses, such as murder, are involved, is not an easy decision. But in reaching it, the constitutional right to bail and the presumption of innocence cannot be overlooked. [61 N.J. at 364-365, 294 A.2d 245]

2. Follow up by staff.

Current practices involving the prompt interview of incarcerated indictable defendants by the bail unit is well designed. It *526 should continue. Procedures must be instituted, however, for equally prompt interviews of defendants who are incarcerated on non-indictable charges. Jail is at least as onerous for them as it is for others.

3. The first appearance; the first bail review.

The first appearance required by R. 3:4-2 is, in most cases, the first opportunity for a Superior Court judge to set bail or to review bail set at the time of an arrest. The language of the rule is mandatory  bail must be set then, if it has not been set. If it has been, a review should then occur. The review, while taking into consideration the reasons supporting the initial bail decision, must be de novo, in recognition of the emergency nature of the initial bail-setting process and the likely inadequacy of the information received because time has not permitted a thorough inquiry.
Defendant is always present at the first appearance proceeding. The presence of counsel is not required but must be permitted when a defendant is represented. Defendants should be allowed to speak for the purpose of correcting or providing factual information, after appropriate warning. They have that right since they are more than mere listeners. To be present in silence may be not to be present at all.
Under present arrangements, bail is reviewed on a near-automatic basis at the frequent suggestion of the bail unit and by the sua sponte action of the judge who deals with bail. This should continue. However, all bail decisions should be reviewed not less often than every three months, thus complying with the requirements of R. 3:26-1(b) and (c), which authorizes the setting of bail in connection with a crime punishable by death when the person charged has not been indicted within three months and requires the discharge of a defendant on his own recognizance when an indictment or accusation has not been moved for trial within six months.
*527 In addition, bail decisions must be reviewed on defense applications, provided those applications are made formally, on written notice with good cause shown. The court may refuse to hear a motion in the absence of a showing of good cause.
In all reviews subsequent to the first appearance, defendant's right to counsel must be honored and defendant's right to be present must be recognized. Reasonable notice to both defendant and counsel of bail review hearings is therefore a necessity.
Finally, reasons for all bail review actions must be provided of record.

4. Records.

All information to be considered by the court in reviewing bail must be made available to defense counsel (or to a pro se defendant) for inspection, copying (unless copies are otherwise provided) and transcription  at any time after the arrest. It is sufficient that reasons for bail decisions be available from the court records. When reasons are delivered orally in the context of court proceedings, defendants and their counsel can be expected, and required, to obtain transcripts. It is likely that a transcript will be needed in only a small number of cases. It is always desirable to have reasons set forth in the bail report so that they are readily available to judges, defendants and defense counsel for review purposes.

Conclusion.
The bail decisions affecting the within defendants shall be reviewed within 48 hours from the date of the filing of this opinion subject to all of the procedural requirements set forth herein.
NOTES
[1] The factual circumstances recited in both cases are accurate as of the date the motion was argued.
[2] A rule denying admission without bail in all but capital cases would be salutary.
[3] Of course, a defendant who is represented is entitled to have counsel present at every stage in a criminal proceeding, critical or not.