**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

August 9, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55544-1-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| MICHAEL SHAWN CHARLTON, | |
| Appellant. | |

MAXA, J. – Michael Charlton appeals his convictions of third degree child rape and third degree child molestation and the imposition of two community custody conditions. The primary issue on appeal arises from the fact that the trial court did not appoint defense counsel for Charlton at his first two preliminary court appearances following his arrest. Charlton argues that the preliminary hearings were critical stages of the criminal proceedings, and therefore this failure to appoint counsel violated the Sixth Amendment to the United States Constitution and constituted structural error requiring reversal of his convictions.

We hold that (1) the constitutional right to counsel attached at Charlton's first two appearances; (2) Charlton's first court appearance was not a critical stage of the criminal proceedings, but Charlton's second appearance was a critical stage because the trial court addressed the setting of bail; (3) even though the second appearance was a critical stage, we apply a harmless error analysis rather than finding structural error because the violation did not pervade or contaminate the entire criminal proceeding; (4) the trial court's violation of Charlton's right to counsel at the second court appearance was harmless; and (5) as the State

No. 55544-1-II

concedes, community custody condition 14 prohibiting Charlton from possessing a computer or any computer components and community custody supervision fees must be stricken from the judgment and sentence.

Accordingly, we affirm Charlton's convictions, but we remand for the trial court to strike community custody condition 14 and the community custody supervision fee provision from the judgment and sentence.

FACTS

On December 28, 2019, Charlton's stepdaughter disclosed to police that Charlton had engaged in sexual contact with her a few days earlier. Two days later police arrested Charlton for third degree child rape, third degree child molestation, and indecent liberties.

*First Court Appearance*

On December 31, Charlton first appeared in Grays Harbor County Superior Court. The State had not yet charged Charlton. No attorney for Charlton was present during this appearance, nor did the court advise him of his right to counsel at that time.

The court confirmed Charlton's identity and informed him of the crimes for which he had been arrested. When asked if he understood the potential charges, Charlton responded, "I guess so." Report of Proceedings (RP) at 5. The court informed Charlton that the prosecuting attorney was still in the process of gathering information from the police and needed more time before making the final decision regarding the filing of charges against him. The prosecutor requested that the court impose bail to prevent Charlton from returning to his house because that might interfere with the investigation and pose other problems. The prosecutor also requested a sexual assault protection order.

2

No. 55544-1-II

The court noted that the State had until January 3, 2020 to file charges and told Charlton that he would be informed of the charges that would be filed against him at that time. The court also set bail in the amount of $25,000. Charlton began to reply, but the prosecutor interjected and modified his request for a sexual assault protection order by asking for a no-contact order between Charlton, the victim, and the victim's mother. The court agreed to impose a no-contact order.

The court entered an order finding that probable cause existed to believe that Charlton had committed the crimes of third degree child rape, third degree child molestation, and indecent liberties, and ordered Charlton to appear on January 3. The court also entered an order setting bail at $25,000 and prohibiting Charlton from having contact with the victim or the victim's mother.

*Second Court Appearance*

On January 3, the State filed an information formally charging Charlton with third degree child rape, third degree child molestation, and indecent liberties. Charlton appeared in court that afternoon, again without counsel present. The prosecutor informed the court that the information had been filed. The prosecutor then handed the court Charlton's handwritten application for pretrial release and an indigency screening form.

The court confirmed Charlton's identity, read the charges in the information to him, and asked if Charlton understood the charges. Charlton replied, "Yes, I think I do." RP at 11. The court then advised Charlton of his rights to an attorney and to remain silent. Charlton stated that he was hoping for a court-appointed attorney. The court determined that Charlton qualified for appointment of counsel and appointed defense counsel to represent him. The court set an arraignment hearing for January 6.

3

No. 55544-1-II

After confirming with the prosecutor that probable cause had been found at the previous hearing, the court asked for the State's position regarding conditions of release. The court reaffirmed the no-contact order with the victim and victim's mother due to concerns about witness tampering. The court declined to order that Charlton have no contact with his biological children. There later was a discussion between Charlton and the court about how he could see his biological children when he could not contact their mother.

Regarding bail, the prosecutor confirmed that Charlton did not have any criminal history, but expressed concern about where Charlton would go because the no-contact order prevented him from returning to his home. The prosecutor proposed that bail remain at $25,000, which "seem[ed] to be doing the trick." RP at 15. Charlton informed the court that he could live in a trailer on his parents' property.

The court maintained bail at $25,000 rather than increasing it in light of Charlton's lack of criminal history, the place he could live, and his ties to the community. But the court stated that the bail was "cash, no bond." RP at 16. In addition, the prosecutor served Charlton with a sexual assault protection order prohibiting contact between Charlton and the victim and a no contact order between Charlton and the victim's mother.

*Arraignment*

On January 6, Charlton appeared for the scheduled arraignment. Defense counsel apparently was not present. The prosecutor stated that defense counsel might be requesting that the arraignment be rescheduled for a week later, and the prosecutor did not object. Charlton stated that he had not been able to meet with his counsel. The court rescheduled the arraignment for January 13.

4

No. 55544-1-II

On January 13, Charlton appeared in court along with defense counsel. Defense counsel entered a plea of not guilty for all three counts on Charlton's behalf and requested Charlton's release from custody on personal recognizance. The court granted this request and released Charlton from custody until trial.

*Trial and Sentencing*

Charlton waived his right to a jury trial. The trial court found Charlton guilty of third degree rape and third degree child molestation. The court dismissed the indecent liberties charge.

At sentencing, the trial court imposed condition 14 as a community custody condition, which prohibited Charlton from possessing a computer or any computer components. The court found Charlton to be indigent and expressly waived community custody supervision fees.

Charlton appeals his convictions and the imposition of community custody condition 14 and community custody supervision fees.

ANALYSIS

A. PRELIMINARY HEARING PROCEDURE

CrR 3.2.1(d)(1) provides that a person who is detained in jail after a warrantless arrest "shall be brought before the superior court as soon as practicable after the detention is commenced . . . but in any event before the close of business on the next court day." *See State v. Reisert*, 16 Wn. App. 2d 321, 326, 480 P.3d 1151, *review denied,* 197 Wn.2d 1023 (2021) (holding that CrR 3.2.1 applies only to warrantless arrests).

CrR 3.2.1(e)(1) provides that "[at] the preliminary appearance, the court shall provide for a lawyer pursuant to rule 3.1." CrR 3.1(b)(1) states, "The right to a lawyer shall accrue as soon

5

No. 55544-1-II

as feasible after the defendant is taken into custody, appears before a committing magistrate, or

is formally charged, whichever occurs earliest."

At the preliminary appearance, the court must orally inform the accused:

(i) of the nature of the charge against the accused;
(ii) of the right to be assisted by a lawyer at every stage of the proceedings; and
(iii) of the right to remain silent, and that anything the accused says may be used against him or her.

CrR 3.2.1(e)(1).

There is a presumption that the accused will be released on personal recognizance

pending trial unless the court finds one of three factors, including that there is a likely danger that

the accused "will seek to intimidate witnesses, or otherwise unlawfully interfere with the

administration of justice." CrR 3.2(a)(2)(b). If the court finds that release should be denied, "the

court shall proceed to determine whether probable cause exists to believe that the accused

committed the offense charges." CrR 3.2.1(e)(2).

Unless an information has been filed, an accused may not be detained in jail for more

than 72 hours after the detention, excluding Saturdays, Sundays, and holidays. CrR 3.2.1(f)(1).

If no information has been filed at the time of the preliminary appearance, the court must release

the accused or set a time within that 72-hour period when the accused must appear in court. CrR

3.2.1(f)(2).

B.    ATTACHMENT OF CONSTITUTIONAL RIGHT TO COUNSEL AT PRELIMINARY HEARING

As noted above, CrR 3.2.1(e)(1) requires that counsel be provided to a defendant at the

preliminary court appearance. But regardless of the rule, Charlton is asserting that the trial

court's failure to provide him with counsel at the preliminary hearings violated his constitutional

6

No. 55544-1-II

right to counsel. He further asserts that, as discussed below, the trial court's failure to do so amounts to structural error.[1]

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to counsel. " 'An accused's right to be represented by counsel is a fundamental component of our criminal justice system.' " *In re Pers. Restraint of Sanchez*, 197 Wn. App. 686, 698, 391 P.3d 517 (2017) (quoting *United States v. Cronic*, 466 U.S. 648, 653, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

Attachment of the constitutional right to counsel occurs when a prosecution is commenced, which occurs at " 'the initiation of adversary judicial criminal proceedings – whether by way of formal charge, *preliminary hearing*, indictment, information, or arraignment.' " *Rothgery v. Gillespie County*, 554 U.S. 191, 198, 128 S. Ct. 2578, 171 L. Ed. 2d 366 (2008) (emphasis added) (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984)). The Court in *Rothgery* "reaffirm[ed] what we have held before and what an overwhelming majority of American jurisdictions understand in practice: a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." 554 U.S. at 213.

In 1965, our Supreme Court stated in *State v. Jackson* that "the right to counsel extends only to those stages in the judicial process that may be characterized as critical." 66 Wn.2d 24, 28, 400 P.2d 774 (1965). Charlton argues that *Jackson* no longer is good law. To the extent that

---

[1] In contrast, violation of CrR 3.2.1(e)(1) would be subject to the nonconstitutional harmless error analysis. "A violation of a court rule is harmless if there is no reasonable probability that the error materially affected the outcome of the trial." *State v. Scherf*, 192 Wn.2d 350, 375, 429 P.3d 776 (2018).

7

No. 55544-1-II

the court in *Jackson* implied that the constitutional right does not even attach until a critical stage in the proceedings, we agree that *Jackson* would be inconsistent with *Rothgery* and other United States Supreme Court cases. However, we interpret *Jackson* as stating that, as discussed below, there is no *constitutional violation* unless a defendant was deprived of counsel at a critical stage.

Here, under *Rothgery* the constitutional right to counsel arguably attached at Charlton's first court appearance even though no formal charges had yet been filed because his liberty was subject to restriction. But because the parties have not briefed this issue, we do not decide it. We assume for purposes of this opinion that the constitutional right to counsel attached at the time of Charlton's first court appearance.

There is no question that under *Rothgery* the constitutional right to counsel attached at least at the time of Charlton's second court appearance. At that point, Charlton had been formally charged, his liberty was restricted, and the court conducted a preliminary hearing that was a part of adversary judicial criminal proceedings.[2]

C.      CRITICAL STAGE IN CRIMINAL PROCEEDINGS

The attachment of the right to counsel does not end the inquiry. A constitutional violation occurs only if a defendant is deprived of counsel at a "critical stage" in the criminal proceedings. *Sanchez*, 197 Wn. App. at 698.

In *Rothgery*, the Court did not hold that a defendant automatically was entitled to counsel once the right to counsel attached, only that once attachment occurs the defendant is entitled to counsel during any critical stage of the proceedings. 554 U.S. at 212. The Court stated that "counsel must be appointed *within a reasonable time after attachment* to allow for adequate

---

[2] The State does not appear to contest that the constitutional right to counsel attached at Charlton's first and second court appearances.

8

No. 55544-1-II

representation at any critical stage before trial." *Id.* (emphasis added). The court emphasized that " '[t]he question whether arraignment signals the initiation of adversary judicial proceedings . . . is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel.' " *Id.* (quoting *Michigan v. Jackson*, 475 U.S. 625, 629 n.3, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986)).

Charlton argues that his first and second court appearances were critical stages of the criminal proceedings, and therefore the failure of the trial court to appoint counsel at those appearances violated his constitutional right to counsel. We disagree regarding the first appearance but agree regarding the second appearance.

1.     Meaning of "Critical Stage"

Our Supreme Court in *State v. Heddrick* stated, "A critical stage is one 'in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.' " 166 Wn.2d 898, 910, 215 P.3d 201 (2009) (quoting *State v. Agtuca*, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974)). The United States Supreme Court stated, "The Court has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

As noted above, our Supreme Court in *Jackson* addressed whether a preliminary hearing was a critical stage in a criminal proceeding. 66 Wn.2d at 28-30. In that case, the defendant appeared without counsel at a hearing in which he plead not guilty and in which witnesses testified about a written complaint charging the defendant with a crime. *Id.* at 24-25. The purpose of the hearing was to determine the existence of probable cause to formally charge the defendant. *Id.* at 29. The court stated that a hearing does not constitute a critical stage in the

9

No. 55544-1-II

proceeding "[i]f there is no possibility that a defendant is or would be prejudiced in the defense of his case." *Id.* at 28. The court emphasized that the defendant did not make any statements at the hearing that were admissible as evidence and that nothing occurred at the hearing that was material to the eventual trial. *Id.* Accordingly, the court held that the preliminary hearing was not a critical stage in the proceeding. *Id.* at 29-30.

In *Sanchez*, Division Three of this court analyzed whether a defendant's appearance without counsel at a preliminary hearing akin to an arraignment constituted a critical stage in the criminal proceedings. 197 Wn. App. at 697-98. In that case, at a group arraignment hearing the trial court entered summary not guilty pleas on behalf of the defendant and entered an order setting omnibus hearing and trial dates. *Id.* at 690-91. The defendant argued on appeal that the arraignment was a critical stage in the proceedings. *Id.* at 697-98.

The court in *Sanchez* emphasized that the critical stage analysis required an examination of the nature of the hearing, and that "[o]nly if the nature of his arraignment was such that he stood to lose important rights that might affect the outcome of his case should it be considered a critical stage." *Id.* at 702. The court concluded that the hearing was not a critical stage because the defendant did not risk waiving any rights or foregoing any defenses, did not make any admissions of guilt, did not forfeit any right to plead guilty or plead not guilty by reason of insanity, and did not allow any right or defense to go unpreserved. *Id.* at 702-03. Instead, the court merely ascertained the defendant's name, advised him of certain rights, and informed him of the filed charges. *Id.* at 702.

Our Supreme Court denied review in *Sanchez*. 189 Wn.2d 1023, 408 P.3d 1089 (2017). The commissioner's ruling stated that under the circumstances of the case, "the Court of Appeals correctly held that the pretrial hearing was not a critical stage of the prosecution. No irrevocable

10

No. 55544-1-II

plea was entered, no evidence was submitted, and no admissions were made. The Court of Appeals applied the correct and long-established legal test for determining whether a pretrial hearing was a critical stage of the proceedings." Ruling Denying Review, *In re Pers. Restraint of Sanchez,* No. 94198-0 (Wash. Aug. 21, 2017) at 3.

    2.    Prejudice in Defense of Case

The rule stated in *Jackson* and *Sanchez* is that a preliminary hearing is not a critical stage in the proceedings as long as the defendant is not prejudiced in the defense of the charges against them. *Jackson*, 66 Wn.2d at 28-30; *Sanchez*, 197 Wn. App. at 702-03.

The facts here are similar to those in *Sanchez*. At the first hearing, Charlton said nothing other than confirming his name and responding to whether he understood the crimes for which he was arrested. At the second hearing, Charlton again said very little. He confirmed his name, listened to the charges against him, and stated that he understood them. He mentioned that he could live in a trailer on his parents' property. And he discussed how he could contact his biological children.

The court here did nothing that could affect Charlton's defense of the charges against him. As in *Sanchez*, the court did little more than confirm Charlton's name, advise him of certain rights, and read the charges. *See Sanchez*, 197 Wn. App. at 702. Similarly, as in *Sanchez*, Charlton did not risk waiving any rights or foregoing any defenses, did not make any admissions of guilt, did not forfeit any right to plead guilty or plead not guilty by reason of insanity, and did not allow any right or defense to go unpreserved. *See id.*

Charlton asserts that *Jackson* is no longer good law and that *Sanchez* was wrongly decided. He primarily relies on *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970).

11

No. 55544-1-II

The preliminary hearing at issue in *Coleman,* at which the defendant was not provided counsel, was for the purpose of determining whether there is sufficient evidence to present the case to a grand jury and to set bail if so. 399 U.S. at 8. The hearing apparently involved the presentation of evidence and the testimony of witnesses. *Id.* at 9. But under Alabama law, the defendant was not required to advance any defenses to preserve them and the State could not use at trial anything that occurred at the hearing. *Id.* at 8-9. Nevertheless, the Court concluded that the preliminary hearing was a critical stage in the proceedings. *Id.* at 9-10.

The Court stated that whether a hearing is a critical stage requires an analysis of " 'whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.' " *Id.* at 7 (quoting *United States v. Wade*, 388 U.S. 218, 227, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967)). The Court identified four advantages that counsel could provide: (1) skilled examination and cross-examination of witnesses may expose weaknesses in the State's case that could result in a dismissal, (2) skilled interrogation of witnesses could provide a vital impeachment tool for cross-examination of those witnesses at trial, (3) counsel can more effectively discover the State's case and allow for preparation of a proper defense at trial, and (4) counsel can make effective arguments on such matters as an early psychiatric examination or bail. *Coleman,* 399 U.S. at 9. The court concluded that the defendant's inability to realize these advantages compels the conclusion that the preliminary hearing at issue was a critical stage in the criminal process. *Id.* at 9-10.

The preliminary hearing in *Coleman* was nothing like the ones here (and in *Sanchez*). Most significantly, no evidence or testimony was presented at Charlton's hearings. Therefore,

12

No. 55544-1-II

the first three advantages of counsel identified in *Coleman* were inapplicable. And other than

bail (discussed below), there were no additional matters for counsel to address.

If bail had not been imposed, we would conclude that neither of Charlton's preliminary

court appearances were critical stages in the criminal proceedings.

3.    Imposition of Bail

There is one significant difference between *Sanchez* and this case: the trial court here

addressed and imposed bail at both hearings. Although the imposition of bail may not

necessarily impact the ultimate result at trial, bail certainly has a significant effect on a

defendant's liberty interest. Charlton argues that the setting of bail at his two preliminary court

appearances meant that those appearances constituted critical stages of the criminal proceedings.

We disagree regarding the first appearance but agree regarding the second appearance.

Courts in other jurisdictions have held that the setting of bail is a critical stage in criminal

proceedings. *Booth v. Galveston County*, 352 F. Supp. 3d 718, 738-39 (S.D. Tex. 2019); *State v.*

*Fann*, 239 N.J. Super. 507, 519-20, 571 A.2d 1023 (1990).[3] The court in *Fann* stated,

> The setting of bail certainly is a "critical stage" in the criminal proceedings. It is
> an action that occurs after adversary criminal proceedings have been commenced.
> Its importance to defendant in terms of life and livelihood cannot be overstated.
> The effect on family relationships and reputation is extremely damaging. Failure
> of pretrial release causes serious financial hardship in most cases. Jobs and
> therefore income are lost. The immediate consequence of the absence of bail or the
> inability to make bail–deprivation of freedom–standing alone, is critically
> consequential.

239 N.J. Super. at 519.

---

[3] *But see Fenner v. State*, 381 Md. 1, 19-23, 846 A.2d 1020 (2004); *Padgett v. State*, 590 P.2d
432, 436 (Alaska 1979) (both holding that a bail hearing is not a critical stage).

No. 55544-1-II

As noted above, the Court in *Coleman* referenced arguments regarding bail as one of the benefits of having counsel at a preliminary hearing. 399 U.S. at 9.

Charlton's first court appearance involved the prosecutor's request to detain him in jail while the State decided whether to formally charge him. And the court did set bail. This setting of bail was not insignificant in that it affected Charlton's liberty interest. However, under CrR 3.2.1(f), any detention was limited to 72 hours and Charlton was entitled to another hearing within that same 72 hours. Therefore, the court's bail decision was for a temporary and brief period and did not infringe upon his liberty interest any further than already allowed by court rule.

We conclude that Charlton's first court appearance was not a critical stage in the criminal proceedings even though bail was addressed.[4]

Charlton's second court appearance was different. The State had formally charged him and the court's bail decision no longer was temporary. Unless modified later, the bail the trial court set would remain until trial. And unless Charlton could post bail, he would remain in jail until the time of trial. As a result, the trial court's discussion of bail at the second preliminary hearing had very significant consequences for Charlton's liberty.

We conclude that Charlton's second court appearance was a critical stage in the criminal proceedings because bail was addressed and imposed.[5]

---

[4] This conclusion is consistent with *Fann*, which held that even though a defendant generally has the right to counsel in bail proceedings, counsel is not required to be appointed at the initial appearance. 239 N.J. Super. at 520.

[5] Charlton also points out that at his second court appearance, the trial court violated article I, section 20 of the Washington Constitution by ordering a "cash only" bail. Br. of Appellant at 30. Because the only argument on appeal involves the right to counsel, we do not address this issue.

No. 55544-1-II

D.      REMEDY FOR CONSTITUTIONAL VIOLATION

Charlton argues that because his second appearance constituted a critical stage in his criminal proceedings, his appearance without counsel constituted structural error that requires automatic reversal of his convictions. The State argues that the constitutional harmless error standard should apply. We agree with the State.

1.      Application of Structural Error

Our Supreme Court has stated, "A complete denial of counsel at a critical stage of the proceedings is presumptively prejudicial and calls for automatic reversal." *Heddrick*, 166 Wn.2d at 910 (citing *Cronic*, 466 U.S. at 658-59, 659 n.25). The Court in *Cronic* emphasized that the Supreme Court had "uniformly found constitutional error without any showing of prejudice when counsel was . . . totally absent . . . during a critical stage of the proceeding." 466 U.S. at 659 n.25.

Although the *Cronic* footnote upon which the court in *Heddrick* relied was stated in absolute terms, a subsequent United States Supreme Court case narrowed the application of the presumption of prejudice. In *Satterwhite v. Texas*, the Court stated that the general rule was constitutional violations were subject to a harmless error analysis. 486 U.S. 249, 256, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988). But there was an exception to this rule: "Some constitutional violations, however, by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. Sixth Amendment violations *that pervade the entire proceeding* fall within this category." *Id.* (emphasis added).

The Court emphasized that the prior cases adopting a rule of automatic reversal were "all cases in which the deprivation of the right to counsel affected – and contaminated – the entire criminal proceeding." *Id.* at 257. The violation in that case – requiring the defendant to submit

15

No. 55544-1-II

to psychiatric examinations without consulting counsel psychiatric testimony – merely involved the admission of psychiatric testimony. *Id.* at 257-58. Therefore, the Court held that the harmless error standard applied. *Id.* at 258.

*Satterwhite* suggests that even if a defendant is deprived of counsel at a critical stage in the criminal proceeding, that constitutional violation does not constitute structural error if the violation did not "pervade" or "contaminate" the entire proceeding. *Id.* at 256, 257. Courts in other jurisdictions have so held. *E.g.*, *Ditch v. Grace*, 479 F.3d 249, 256 (3d Cir. 2007) ("A denial of counsel at any critical stage at which the right to counsel attaches does not require a presumption of prejudice. Rather, a presumption of prejudice applies only in cases where the denial of counsel would necessarily undermine the reliability of the entire criminal proceeding."); *United States v. Owen*, 407 F.3d 222, 226 (4th Cir. 2005) (stating that the "harmless-error analysis applies to the denial of the Sixth Amendment right to counsel at all stages of the criminal process, except for those where such denial "affects and contaminates" the entire subsequent proceeding."); *Ellis v. United States*, 313 F.3d 636, 643 (1st Cir. 2002) (absence of counsel at critical stage would require presumption of prejudice only if "pervasive in nature, permeating the entire proceeding").[6]

Division Three of this court adopted this position in *Sanchez*:

But United States Supreme Court jurisprudence establishes that constitutional harmless error analysis applies to the denial of the Sixth Amendment right to counsel at all stages of criminal proceedings, except for those where "the deprivation of the right to counsel affected – and contaminated – the entire criminal proceeding."

197 Wn. App. at 699 (quoting *Satterwhite*, 486 U.S. at 257).

---

[6] *But see Musladin v. Lamarque*, 555 F.3d 830, 836-38 (9th Cir. 2009) (concluding that the holding in *Cronic* requiring automatic reversal when a defendant is denied counsel at a critical stage remains binding regardless of *Satterwhite*).

16

No. 55544-1-II

We agree with the court in *Sanchez* that *Satterwhite* modified the absolute rule regarding structural error stated in *Cronic*. We conclude that when a defendant is deprived of the right to counsel at a critical stage in the criminal proceedings, the presumption of prejudice applies only when the violation pervades and contaminates the entire case. *Satterwhite*, 486 U.S. at 256-67; *Sanchez*, 197 Wn. App. at 699-700. If not, the constitutional harmless error analysis applies. *Satterwhite*, 486 U.S. at 257-58; *Sanchez*, 197 Wn. App. at 699.

Our conclusion that a violation of the right to counsel at a critical stage does not automatically constitute structural error is consistent with *Coleman*. In that case, the Court held that even though the preliminary hearing in that case was a critical stage, the harmless error analysis applied rather than structural error. 399 U.S. at 10. Significantly, *Cronic* did not overrule – or even mention – *Coleman*.

Our conclusion may appear to be inconsistent with the broad statement in *Heddrick* that the denial of counsel at a critical stage requires automatic reversal. 166 Wn.2d at 910. But the court in *Heddrick* was only stating the general rule and did not need to address *Satterwhite* because the court concluded that the defendant was not denied the right to counsel at a critical stage in the proceedings. *Id.* at 911-12.

2.    Harmless Error Analysis

Under the constitutional harmless error analysis, an error is harmless if the State establishes beyond a reasonable doubt that the verdict would have been the same result without the error. *State v. Orn*, 197 Wn.2d 343, 359, 482 P.3d 913 (2021).

Here, the trial court's imposition of bail had no effect on the remainder of the case. Because of the court's bail decision and the continuance of the arraignment, Charlton was in jail for an additional 10 days. His brief continued detention certainly did not pervade or contaminate

17

No. 55544-1-II

the entire proceeding. Therefore, there was no structural error and we must apply the harmless error analysis.

Charlton argues that pretrial detention can have consequences at trial, citing an article suggesting a correlation between pretrial detention and an increased likelihood of conviction. But Charlton was detained for only 10 days after the second court appearance. There is no indication that such a brief period could have affected the trial. And he identifies no specific way that this period of detention or any other consequence of his lack of an attorney at the second court appearance impacted the trial, the verdict, or even the amount of bail.

We hold that the right to counsel violation at Charlton's second court appearance was harmless.

E.      COMMUNITY CUSTODY CONDITION 14

Charlton argues, and the State concedes, that the trial court erred in imposing community custody condition 14. We agree.

A sentencing court may impose community custody conditions only as authorized by statute. *State v. Kolesnik,* 146 Wn. App. 790, 806, 192 P.3d 937 (2008). A sentencing court is authorized to impose prohibitions related to the crime. RCW 9.94A.703(3)(f). If the court orders a condition outside of the court's authority as authorized by statute, the condition must be stricken. *State v. O'Cain*, 144 Wn. App. 772, 775, 184, P.3d 1262 (2008).

Condition 14 states that Charlton can "not possess a computer or any computer components." CP at 89. There is no evidence indicating Charlton used a computer or any computer components in the commission of the crimes in this case. Because condition 14 is not related to the crimes for which Charlton stands convicted, it is not authorized by statute. Therefore, it must be stricken from the judgment and sentence.

18

No. 55544-1-II

F.    COMMUNITY CUSTODY SUPERVISION FEES

Charlton argues, and the State concedes, the imposition of community custody supervision fees should be stricken from the judgment and sentence.  We agree.

Community custody supervision fees are discretionary LFOs because they are waivable by the trial court.  *State v. Bowman*, 198 Wn.2d 609, 629, 498 P.3d 478 (2021).  And here, the trial court expressly stated that it was waiving community custody supervision fees.  In this situation, the supervision fees must be stricken from the judgment and sentence.

CONCLUSION

We affirm Charlton's convictions, but we remand for the trial court to strike community custody condition 14 and the community custody supervision fee provision from the judgment and sentence.

_____
MAXA, J.

We concur:

_____
GLASGOW, C.J.

_____
CRUSER, J.

19